JERRY'S ENTERPRISES, INC., Appellant,

v.

LARKIN, HOFFMAN, DALY & LINDGREN, LTD., et al., Respondents.

No. A04–188.

Court of Appeals of Minnesota.

Jan. 24, 2005.

James P. McCarthy, Christopher L. Lynch, Lindquist & Vennum, PLLP, Minneapolis, MN, for appellant.

Lindsay G. Arthur, Jr., Kirsten J. Hansen, Arthur, Chapman, Kettering, Smetak & Pikala, PA, Minneapolis, MN, for respondents.

Considered and decided by WILLIS, Presiding Judge; HALBROOKS, Judge, and HUDSON, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges the district court's order granting respondents' motion for a directed verdict on appellant's legal-malpractice claim. Because we conclude that the district court erred by granting the motion, we reverse and remand.

## FACTS

Appellant Jerry's Enterprises, Inc. (Jerry's) owns and operates grocery stores. Respondents are law firm Larkin, Hoffman, Daly & Lindgren, Ltd., which began representing Jerry's in 1987; attorney Tim Stoltman, Jerry's primary contact at the law firm; and attorney Gary Renneke, a Larkin, Hoffman attorney who represented Jerry's at the closing of the property at issue here (hereafter collectively referred to as Larkin, Hoffman). This case arises from Larkin, Hoffman's representation of Jerry's from 1993 to 2001, when it assisted Jerry's in acquiring certain property in Woodbury.

William Bruggeman and Eugene Zugschwert, as trustee for The Builders Wholesale, Inc. Profit Sharing Trust, (hereafter together referred to as Bruggeman), owned a parcel of the Woodbury property. Jerry's, represented by Stoltman, negotiated an option agreement for the purchase by Jerry's of the Bruggeman parcel. At Bruggeman's insistence, the final option agreement gave Bruggeman the right to repurchase the parcel if Jerry's failed to develop the parcel within two years after exercising its purchase option.[1] Stoltman drafted the option agreement, but before adding the repurchase provision, he advised Jerry's in writing that, strategically, Jerry's should not close on the purchase of the property until it had a commitment for construction of its intended development and all necessary approvals. He explained that the two-year period for development of the parcel "provides you a safety net in the event a market study or some other reason comes up which prevents commencement of construction immediately after closing."

Jerry's originally intended to build a Cub Foods store on the Bruggeman parcel, but its plans changed before it exercised the purchase option. Jerry's told Stoltman that its new plan was to purchase the property, subdivide it, and develop it for resale.

Although Stoltman's notes shortly after the option agreement was signed indicate that he recognized that he should request the elimination of the repurchase provision, he did not discuss eliminating the provision either with Jerry's or with Bruggeman. And the repurchase provision was never eliminated.

The closing documents, which were drafted by Bruggeman's counsel, did not mention the option agreement or its repurchase provision. Stoltman testified that when he reviewed the closing documents, he did not consider whether the repur-

1. Bruggeman's repurchase price was to be the sum of (a) the purchase price paid by Jerry's for the Bruggeman parcel and for an adjacent parcel; (b) the cost incurred by Jerry's for all improvements made to or incorporated into these properties, including real estate taxes and special assessments paid by Jerry's; and (c) interest equal to the prime rate of interest plus two percent per year from the date of each expenditure by Jerry's.

chase provision in the option agreement would survive closing. He also testified that he did not warn Jerry's that the repurchase provision possibly created a cloud on the title that Jerry's received because he did not believe that such a possibility existed.

■ Jerry's exercised its purchase option, and its purchase of the Bruggeman parcel for $2.4 million closed on August 10, 1995. Jerry's was represented at closing by Stoltman's colleague, Gary Renneke, because Stoltman was unavailable. Renneke testified that he noticed that the repurchase provision was not mentioned in the closing documents but that he did not form an opinion regarding whether the repurchase provision merged[2] into the deeds at closing and did not discuss with any representative of Jerry's whether the repurchase provision survived the closing.

During the two years after Jerry's exercised its purchase option, Jerry's began improving the property by grading and doing utility-installation work. Jerry's received no advice from Larkin, Hoffman about the nature of the development necessary to avoid the repurchase provision if that provision survived the closing. On August 13, 1997, Jerry's president, Robert Shadduck, received notice that Bruggeman was exercising its right under the repurchase provision. Stoltman advised Shadduck, in writing, that the response to the notice should be (1) that the repurchase provision merged into the deeds that were delivered to Jerry's at closing, and neither deed mentioned the repurchase provision as a "permitted encumbrance"; (2) that the sellers failed to indicate in the closing documents that they intended to retain the

repurchase provision; and (3) that Jerry's has avoided the repurchase provision by commencing the construction of improvements in the form of grading and utility-installation work. On August 22, Stoltman wrote such a letter on behalf of Jerry's, rejecting Bruggeman's repurchase attempt. Stoltman testified that he did not research the merger issue before advising Shadduck or before writing the letter.

Bruggeman then sued Jerry's, seeking specific performance of the repurchase provision. Because Larkin, Hoffman had not informed the title insurer of the existence of the repurchase provision in the purchase-option agreement, the title insurer rejected the tender of the defense of Bruggeman's claim. Jerry's hired Larkin, Hoffman to defend it in the suit, and Larkin, Hoffman researched for the first time the issue of whether the repurchase provision survived the closing.

The district court granted summary judgment to Jerry's. This court reversed. *See Bruggeman*, 591 N.W.2d at 706 (Minn. 1999). The Minnesota Supreme Court affirmed the court of appeals and remanded the case to the district court for further proceedings. *Id.* at 711. The supreme court acknowledged that it had "not squarely addressed, until now, whether agreements to perform acts subsequent to closing are governed by the merger doctrine." *Id.* at 709. The supreme court held "that the presumption of merger does not apply to this repurchase option agreement which could not, by its very nature, be performed prior to closing." *Id.* at 710. The court went on to explain that "no presumption of merger exists to bar respondents, as a matter of law, from assert-

---

2. Generally, the merger doctrine prevents "parties from asserting their rights under a purchase agreement after the deed has been executed and delivered.... [T]he rights of the parties are to be determined by the deeds, and

not by the contracts, the presumption being that the deeds give expression to the final purposes of the parties...." *Bruggeman v. Jerry's Enters., Inc.*, 591 N.W.2d 705, 708 (Minn.1999) (quotations omitted).

ing their contract claims. It will be the task of the district court on remand to evaluate the parties' competing claims and determine whether appellant owes respondents a contractual duty to re-convey the property." *Id.* at 711.

In November 2000, the district court entered judgment for Bruggeman. The parties subsequently entered into a settlement agreement that required Jerry's to pay Bruggeman $4.2 million for a quitclaim deed transferring all of Bruggeman's right, title, and interest in the parcel to Jerry's. There was evidence in the district court in the case now on appeal that at the time of the settlement, the property had a fair market value of $7.9 million.

In May 2002, Jerry's commenced this action against Larkin, Hoffman, alleging legal malpractice, professional negligence, and breach of duty. Larkin, Hoffman moved for summary judgment, which the district court denied on the grounds that genuine issues of material fact existed regarding the applicable standard of care, proximate cause, and damages.

At trial, Theodore Meyer, an expert witness for Jerry's, testified that the standard of care for a Twin Cities commercial-real-estate attorney representing a buyer of property included: (1) a duty to advise clients of all relevant legal considerations affecting the client's interests; and (2) a duty to make certain that the title the client receives is adequate for the client's purposes. Meyers testified that, in his opinion, Larkin, Hoffman's failure to identify the possible cloud on the title that the repurchase provision represented and its failure to raise the issue with Jerry's was negligence and malpractice.

The district court permitted witnesses to testify about their understanding of the scope of the merger doctrine in Minnesota before the supreme court's *Bruggeman* decision. Witnesses were asked how district court orders, published opinions from foreign jurisdictions, and CLE materials influenced their opinions. But the district court interpreted Minnesota law to prohibit the jury from considering unpublished judicial opinions and would not permit the witnesses to explain whether their opinions were influenced by this court's unpublished opinions.

When Jerry's rested its case, Larkin, Hoffman moved for a directed verdict, arguing that its attorneys had no duty to research whether the repurchase provision would survive closing or to warn Jerry's of the possibility that it might do so because no attorney could have predicted that the supreme court would create a new exception to the merger doctrine. The district court granted Larkin, Hoffman's motion and subsequently denied a motion by Jerry's for a new trial. The district court reasoned that "but for the Minnesota Supreme Court's decision in *Bruggeman* the Defendants would not be liable . . . . [b]ecause . . . there wasn't any financial loss that was certain" until the supreme court's decision. The district court also determined that because attorneys have no duty to predict changes in the law, there was no persuasive evidence that Larkin, Hoffman did not meet the applicable standard of care. This appeal follows.

## ISSUES

I. Did the district court err by granting Larkin, Hoffman's motion for a directed verdict after concluding that attorneys cannot be liable for malpractice when an issue of unsettled law is decided against their client's interests, even when the attorneys have failed to exercise any legal judgment?

II. Did the district court abuse its discretion by allowing witnesses to testify regarding their opinions of the scope of the

merger doctrine in Minnesota before the *Bruggeman* decision? Alternatively, did the district court abuse its discretion by refusing to allow attorneys to testify whether unpublished opinions of the Minnesota Court of Appeals influenced their opinions regarding the scope of the merger doctrine in Minnesota before the *Bruggeman* decision when it allowed attorneys to testify how other nonprecedential sources informed their opinions regarding this doctrine?

## ANALYSIS

### I.

■ Jerry's argues that the district court erred by granting Larkin, Hoffman's motion for a directed verdict after concluding that attorneys cannot be liable for malpractice when an issue of unsettled law is decided against their client's interests, regardless of the attorneys' lack of effort to determine the state of the law or their failure to inform the client of the law's uncertainty. On appeal from a directed verdict, this court makes an independent determination of whether sufficient evidence existed to present a fact question to the jury. *Boone v. Martinez*, 567 N.W.2d 508, 510 (Minn.1997). In making this determination, we review the evidence in a light most favorable to the nonmoving party. *Id.* We must therefore decide whether Jerry's has shown that sufficient evidence exists to establish a question of fact for the jury on its legal-malpractice claim.

■ The plaintiff in a legal-malpractice action must usually prove four elements: (1) the existence of an attorney-client relationship; (2) acts by the attorney amounting to negligence or breach of contract; (3) that the attorneys acts were the proximate cause of the plaintiffs damages; and (4) that but for the attorneys conduct, the plaintiff would have been successful in the

action. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 408 (Minn.1994). The parties here disagree about the applicability of the fourth element. Larkin, Hoffman appears to argue that the *Bruggeman* case is the "action" here, and it asserts that Jerry's would not have succeeded in that case regardless of Larkin, Hoffman's conduct because the supreme court created a new exception to the merger doctrine in *Bruggeman.* Jerry's argues that because Larkin, Hoffman's negligence occurred in a transactional matter, the fourth element described in *Rouse* does not apply.

■ This court has noted that "when an attorney's negligence harms a plaintiff by some means other than destruction of or damage to a cause of action, the fourth . . . element is inapplicable." *First Bank v. Olson*, 557 N.W.2d 621, 623 (Minn.App. 1997), *review denied* (Minn. Mar. 18, 1997). A transactional matter, for example, does not involve a cause of action. *See Fiedler v. Adams*, 466 N.W.2d 39, 42 (Minn.App. 1991), *review denied* (Minn. April 29, 1991). In such instances, more traditional concepts of proximate cause, rather than "but for" causation, are used. *Hill v. Okay Constr. Co.*, 312 Minn. 324, 338, 252 N.W.2d 107, 117 (1977).

Here, the district court concluded that "but for" the decision in the *Bruggeman* case, Jerry's had no claim for legal malpractice because any financial loss was uncertain until the Minnesota Supreme Court decided *Bruggeman.* The district court reasoned that Larkin, Hoffman could not be liable for malpractice because it had no duty to predict that the supreme court would create a new exception to the merger doctrine.

■ But Jerry's argues that Larkin, Hoffman was negligent when it reviewed the closing documents, when it failed to identify the possible cloud on the title, and when it failed to inform Jerry's of that

issue. This alleged negligence occurred during a transactional matter—negotiations for purchase and the purchase of property—not during the course of litigating a claim. We conclude, therefore, that the district court erred by applying a "but for" analysis.

Because we conclude that the "but for" element is inapplicable here, Jerry's must show that sufficient evidence exists at least to raise questions of fact regarding the first three elements of a legal-malpractice claim: the existence of an attorney-client relationship between Jerry's and Larkin, Hoffman; acts by Larkin, Hoffman amounting to negligence; and that Larkin, Hoffman's acts were the proximate cause of the damage that Jerry's suffered.

### a. Attorney-client relationship

The parties stipulate that an attorney-client relationship existed here.

### b. Acts amounting to negligence

■ Jerry's argues that it introduced sufficient evidence for the jury to decide that Larkin, Hoffman breached the applicable standard of care, in other words, that a question of fact exists regarding whether Larkin, Hoffman acted negligently. An attorney is negligent when he or she fails to exercise the "degree of care and skill that is reasonable under the circumstances, considering the nature of the undertaking." *Fiedler*, 466 N.W.2d at 42 (quoting *Prawer v. Essling*, 282 N.W.2d 493, 495 (Minn.1979)). But an attorney is protected from malpractice claims as long as the attorney "acts honestly and in good faith to the best of his skill and knowledge, or with at least reasonable skill and learning and an ordinary degree of attention or care." *Sjobeck v. Leach*, 213 Minn. 360, 365, 6 N.W.2d 819, 822 (1942) (quotation omitted).

■ The applicable standard of care for attorneys and whether that standard of care has been breached are usually established through expert testimony in legal-malpractice actions. *Fiedler*, 466 N.W.2d at 43. Here, Meyer, the expert witness for Jerry's, testified that the applicable standard of care for a Twin Cities commercial-real-estate attorney representing a buyer requires: (1) that the attorney advise the client of all relevant legal considerations affecting the client's interests; and (2) that the attorney makes certain that the client receives adequate title for the client's purposes. Meyer also testified that, in his opinion, Larkin, Hoffman breached the applicable standard of care by failing to identify the possible cloud on the title created by the repurchase provision and by failing to raise the issue with Jerry's. He testified that Larkin, Hoffman's failure to consider this issue at all was negligence and malpractice.

■ In contrast, Larkin, Hoffman argues that it did not breach a duty to Jerry's because attorneys are not required to predict future changes in the law. Larkin, Hoffman also argues that it did not have a duty, in a transactional setting, to conduct research into dicta of the Minnesota Supreme Court, unpublished decisions of this court, and decisions from foreign jurisdictions to determine whether the repurchase provision might survive closing.

■ We agree that attorneys do not have a duty to predict changes in the law. It is well settled that ... [a]n attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error of judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers.

*Meagher v. Kavli*, 256 Minn. 54, 60–61, 97 N.W.2d 370, 375 (1959) (quotation omitted). But we conclude that while an attorney is not liable for an error of judgment or mistake in a point of unsettled law, the attorney must exercise legal judgment in some way to be so protected. Because Larkin, Hoffman did not research the issue created by the repurchase provision before advising Jerry's, we conclude that Larkin, Hoffman did not exercise legal judgment before providing its advice and therefore is not immune from liability here.

In light of Meyer's expert testimony, a question of fact exists regarding the applicable standard of care owed to clients by Twin Cities commercial-real-estate attorneys, and a question of fact exists regarding whether Larkin, Hoffman breached that standard of care in representing Jerry's.

### c. Proximate cause of the damages

██ A question of fact also exists regarding whether Larkin, Hoffman's acts proximately caused the damages suffered by Jerry's. Minnesota has adopted the following test for proximate cause in legal-malpractice cases:

> For negligence to be the proximate cause of an injury, it must appear that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was likely to result in injury to others, then he is liable for any injury proximately resulting from it, even though he could not have anticipated the particular injury which did happen.

*Rouse*, 520 N.W.2d at 409 (Minn.1994) (quotation omitted).

There is sufficient record evidence to create a fact question for the jury regarding whether Jerry's suffered damages as a result of Larkin, Hoffman's acts. Jerry's did not receive clear title to the Bruggeman parcel; Jerry's had to pay Larkin, Hoffman to defend the lawsuit brought by Bruggeman; and Jerry's had to pay Bruggeman $4.2 million to acquire clear title to the parcel.

Questions of fact exist regarding whether these damages were proximately caused by Larkin, Hoffman's failure to identify and address the effect of the possible survival of the repurchase provision; its failure to warn Jerry's of the cloud on the title and advise Jerry's regarding the nature of the development required to avoid the repurchase provision; and its failure to provide the title insurer with information regarding the repurchase provision. Whether Larkin, Hoffman could reasonably anticipate that its acts would harm Jerry's is also a question of fact.

Larkin, Hoffman argues that Jerry's was damaged solely because *Bruggeman* created a new exception to the merger doctrine. Larkin, Hoffman claims that if the court had "left the doctrine of merger alone, Jerry's would have kept the property and would have had no basis for a malpractice claim against Larkin." But, again, this is a fact question for the jury because Jerry's asserts damages that do not arise solely from the *Bruggeman* decision.

██ Larkin, Hoffman also argues that the *Bruggeman* decision was a superseding cause of the damage Jerry's suffered. The district court found this argument unpersuasive, as do we. Four elements must be proved to show a superseding cause of the damage suffered by a plaintiff:

> (1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from

the original negligence; and (4) it must not have been reasonably foreseeable by the original wrongdoer.

*Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 113 (Minn.1992) (quotation omitted). When an uncertain legal issue has not been addressed by the supreme court, it is reasonably foreseeable that the supreme court could decide the issue either way. Therefore, the fourth element of a superseding cause cannot be met.

Because questions of fact exist regarding the applicable standard of care owed by Larkin, Hoffman, regarding whether that standard of care was breached, regarding the damages suffered by Jerry's, and regarding whether Larkin, Hoffman's acts were the proximate cause of those damages, the district court erred by granting Larkin, Hoffman's motion for a directed verdict.

## II.

Jerry's asks this court to address two evidentiary issues that arose during the trial and are likely to arise on remand: first, Jerry's argues that the district court abused its discretion by allowing witnesses to testify regarding their opinions of the scope of the merger doctrine in Minnesota before the *Bruggeman* decision; and second, Jerry's argues, in the alternative, that the district court abused its discretion by prohibiting witnesses from testifying how unpublished decisions of this court influenced their opinions regarding the scope of the merger doctrine in Minnesota before the *Bruggeman* decision while allowing witnesses to testify about how other nonprecedential materials informed their opinions.

■ "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the trial court abused its discretion and that appellant was thereby prejudiced." *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003) (citations omitted).

■ Generally, the opinions of experts regarding legal issues are not admissible. *Safeco Ins. Co. of Am. v. Dain Bosworth, Inc.,* 531 N.W.2d 867, 873 (Minn.App.1995), *review denied* (Minn. July 20, 1995). But in legal-malpractice cases, expert testimony is used to establish the applicable standard of care and to establish whether a defendant-attorney's conduct deviated from that standard of care. *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan,* 494 N.W.2d 261, 266 (Minn. 1992). The standard of care for attorneys includes the requirement that an attorney act "with at least reasonable skill and learning." *Sjobeck,* 213 Minn. at 365, 6 N.W.2d at 822 (quotation omitted).

■ Here, the basis for the opinions of local commercial-real-estate attorneys regarding the scope of the merger doctrine before the *Bruggeman* decision is important in determining the applicable standard of care. The district court did not abuse its discretion by allowing such testimony.

■ Jerry's argues alternatively that the district court abused its discretion by prohibiting witnesses from testifying regarding how this court's unpublished decisions influenced their opinions of the scope of the merger doctrine before *Bruggeman.* Unpublished opinions of this court are not precedential, but they may be persuasive. Minn.Stat. § 480A.08, subd. 3(c) (2002); *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800–01 (Minn.App.1993). And attorneys are not prohibited from mentioning unpublished decisions in pretrial conferences, hearings, trials, memoranda, or briefs. Minn.Stat. § 480A.08, subd. 3(c).

Here, the district court allowed witnesses to testify how decisions from foreign jurisdictions, district court opinions, and CLE materials informed their understanding of the scope of the merger doctrine before *Bruggeman*. But the district court refused to allow the jury to hear or consider any information from unpublished decisions of this court, although unpublished opinions of the court of appeals are of no less weight than the materials about which the district court allowed testimony. The jury would not need to determine what the law was before the *Bruggeman* decision. Rather, it would be relevant for the jury to learn how other Twin Cities commercial-real-estate attorneys formed their opinions of the scope of the merger doctrine. The district court should not have excluded testimony of how unpublished opinions of this court might inform an attorney of trends in the law. The district court abused its discretion by refusing to allow the witnesses to testify regarding how the unpublished opinions of this court affected their understanding of the merger doctrine. Because witnesses could have testified that such unpublished opinions might have suggested to attorneys that the repurchase provision would not merge into the deeds at closing, the exclusion of this evidence prejudiced Jerry's. On remand, the district court should not exclude attorney-witnesses' testimony regarding how unpublished opinions of this court informed their understandings of the merger doctrine in Minnesota.

## DECISION

Because fact questions exist regarding whether Larkin, Hoffman was negligent in representing Jerry's and because attorneys may be liable when no legal judgment is exercised in rendering advice about an unsettled area of law, the district court erred by granting Larkin, Hoffman a directed verdict. Because expert testimony about a Twin Cities commercial-real-estate attorney's understanding of the scope of the merger doctrine in Minnesota before the *Bruggeman* decision was at issue in establishing the applicable standard of care, the district court did not abuse its discretion by admitting such testimony. But the district court did abuse its discretion by prohibiting testimony about how this court's unpublished opinions informed this understanding, when testimony about the influences of other nonprecedential sources was allowed.

**Reversed and remanded.**