**JERRY'S ENTERPRISES, INC., Respondent,**

v.

**LARKIN, HOFFMAN, DALY & LINDGREN, LTD., et al., Appellant.**

No. A04–0188.

Supreme Court of Minnesota.

April 6, 2006.

Lindsay G. Arthur, Jr., Robert W. Kettering, Kirsten J. Hansen, Arthur Chapman Kettering Smetak & Pikala, P.A., Minneapolis, MN, for Appellant.

James P. McCarthy, Christopher L. Lynch, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for Respondent.

Charles E. Lundberg, Bassford Remele, A Professional Association, Minneapolis, MN, for Amici Curaie, Minnesota Lawyers Mutual Insurance Company.

Thomas H. Boyd, Winthrop & Weinstine, P.A., Minneapolis, MN, for Amici Curaie, Minnesota State Bar Association.

William Lawrence Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, MN, for Amici Curaie, Minnesota Defense Lawyers Association.

William M. Hart, Meagher & Geer P.L.L.P., Minneapolis, MN, for Amici Curaie, American Insurance Association.

## OPINION

ANDERSON, G. BARRY, Justice.

Jerry's Enterprises, Inc. (Jerry's) brought this action for legal malpractice against the law firm of Larkin, Hoffman, Daly & Lindgren, Ltd. and two of its shareholders, Thomas Stoltman and Gary Renneke (collectively, Larkin). Jerry's

had previously retained Larkin to represent Jerry's in the purchase of undeveloped land in Woodbury, Minnesota. Jerry's alleges that Larkin's representation fell below the standard of care and caused Jerry's to suffer monetary damages in the form of legal fees and settlement costs incurred in the process of clearing title to the property. At the close of Jerry's case, the district court granted Larkin's motion for a directed verdict. The court of appeals reversed and remanded for trial. *See Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren,* 691 N.W.2d 484, 495 (Minn.App.2005). In this appeal from that decision, we hold that questions of fact exist regarding whether Larkin's representation fell below the standard of care and whether Larkin's allegedly negligent conduct was the "but for" cause of Jerry's alleged injuries. We therefore affirm.

In 1993, Robert Shadduck, the president of Jerry's, became interested in purchasing undeveloped land in Woodbury, Minnesota (the property). Larkin entered into a retainer agreement with Jerry's, and Larkin agreed to represent Jerry's in its efforts to purchase the property. No limitation was placed on the scope of Larkin's representation of Jerry's. At that time, the property was divided into two separate parcels. One parcel was owned by William L. Bruggeman; the other was owned by Hardy W. Morningstar. Jerry's subsequently entered into an agreement with Bruggeman and a separate agreement with Morningstar which gave Jerry's the option to purchase both parcels. Included in the agreement between Jerry's and Bruggeman was a buy-back option, drafted by Larkin, that gave Bruggeman the option to purchase the entire property if Jerry's had not begun construction of improvements on the Bruggeman parcel within two years of Jerry's purchase. As Jerry's prepared to exercise its purchase option for the Bruggeman parcel, Stoltman

and Renneke reviewed closing documents drafted by Bruggeman's attorneys. The closing documents did not include the buy-back option. Larkin admits that, at the time of closing and during the two years following, it neither discussed the survival of the buy-back option with Jerry's nor conducted any research to determine whether the buy-back option survived closing. Jerry's eventually closed on both the Bruggeman and Morningstar parcels and became owner of the entire property.

During the next two years, Jerry's proceeded in its efforts to develop the property. Larkin represented Jerry's in these efforts and drafted purchase agreements for the sale of portions of the property. These purchase agreements stated that there were no existing options to purchase the property. Just over two years after Jerry's purchased the Bruggeman parcel, Bruggeman informed Shadduck that he intended to exercise his buy-back option. Shadduck immediately contacted Stoltman, who told Shadduck that Bruggeman's option had been merged into the deed and was thereby extinguished. When Jerry's refused to sell the property to Bruggeman, Bruggeman filed suit against Jerry's. Larkin represented Jerry's in the litigation with Bruggeman. The district court granted Jerry's summary judgment, but on appeal we held that since the buy-back option could not be performed prior to closing, it did not merge into the deed at closing. *Bruggeman v. Jerry's Enters., Inc.,* 591 N.W.2d 705, 706, 710 (Minn.1999). Although Jerry's had purchased a title insurance policy on the property, Jerry's had to pay Larkin for its representation in the litigation with Bruggeman, allegedly because Larkin had neglected to send a copy of the buy-back option to the title insurance company. On remand, the district court ordered Jerry's to sell the property to Bruggeman for $3.1 million, a figure

arrived at through a formula included in the buy-back option. Jerry's and Bruggeman subsequently entered a settlement in which Jerry's paid Bruggeman $4.2 million to retain ownership of the property.

Jerry's filed suit against Larkin, alleging Larkin committed legal malpractice because throughout the months prior to and the two years after Jerry's purchase of the property, Larkin neither warned Jerry's of the possible survival of the buy-back option after closing nor took any steps to extinguish the buy-back option. After Larkin's motion for summary judgment was denied, a jury trial was held. At trial, Jerry's case included the testimony of Shadduck, Stoltman, and Renneke. In addition, Jerry's presented the expert testimony of attorney Theodore Meyer, who opined that Larkin's conduct fell below the applicable standard of care and constituted malpractice. At the close of Jerry's case, the district court granted Larkin's motion for a directed verdict. On appeal, the court of appeals reversed and remanded, holding that sufficient evidence of malpractice had been presented to create a question of fact for a jury. *Jerry's Enters., Inc.*, 691 N.W.2d at 495. Larkin petitioned for further review by this court, and Jerry's cross-appealed. We are presented with the following issues on this appeal:

1.  Whether Larkin is entitled to a directed verdict because Larkin's behavior, as a matter of law, did not fall below the standard of care.

2.  Whether a plaintiff must show "but for" causation in actions alleging legal malpractice in a transactional matter.

3.  Whether the district court abused its discretion by allowing Larkin to introduce evidence relating to the scope of the merger doctrine prior to our statement on the issue in *Bruggeman.*

### I.

■ At the close of the evidence offered by an opponent, a party may seek a directed verdict. Minn. R. Civ. P. 50.01. "If the evidence is sufficient to sustain a verdict for the [nonmoving party], the motion shall not be granted." *Id.* A directed verdict should be granted:

> only in those unequivocal cases where (1) in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case.

*J.N. Sullivan & Assocs., Inc. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975). Viewing the evidence in a light most favorable to the nonmoving party, this court makes an independent determination of whether there is sufficient evidence to present an issue of fact for the jury. *Wall v. Fairview Hosp. & Healthcare Servs.*, 584 N.W.2d 395, 406 (Minn.1998).

■ To bring a successful claim of legal malpractice, a plaintiff traditionally must show four elements: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; [and] (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp. v. O'Toole*, 336 N.W.2d 279, 281 (Minn.1983). If the plaintiff does not provide sufficient evidence to meet all of these elements, the claim fails. *Noske v. Friedberg*, 670 N.W.2d 740, 743 (Minn. 2003). Larkin challenges the sufficiency of the evidence for one of the elements— Larkin argues that the court of appeals erred by finding that a fact question exists

concerning whether Larkin breached its duty to Jerry's.

■■■■ Attorneys have a duty "to exercise that degree of care and skill that is reasonable under the circumstances, considering the nature of the undertaking." *Prawer v. Essling*, 282 N.W.2d 493, 495 (Minn.1979); *Sjobeck v. Leach*, 213 Minn. 360, 365, 6 N.W.2d 819, 822 (1942). Expert testimony is generally required to establish the "standard of care applicable to an attorney whose conduct is alleged to have been negligent, and further to establish whether the conduct deviated from that standard." *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 266 (Minn.1993).

■■ At trial, Jerry's presented the expert testimony of Theodore Meyer, a practicing real estate attorney. Meyer testified that, in his opinion, Larkin failed to meet the required standard of care in its representation of Jerry's by failing to advise Jerry's about the potential cloud on its title so Jerry's could take steps to address the issue. In light of this testimony and Larkin's admission that it did not research the issue of merger until after Bruggeman's attempt to exercise the buy-back option, the court of appeals held that Jerry's had presented sufficient evidence on the element of breach of duty to survive Larkin's motion for directed verdict. *Jerry's Enters., Inc.*, 691 N.W.2d at 493.

Larkin claims that the court of appeals erred in its analysis of this issue in two ways. First, Larkin argues that, as a matter of law, Larkin did not breach its duty of care to Jerry's by failing to warn Jerry's about the potential cloud on the title or to research merger law before Bruggeman attempted to exercise his buy-back option. Larkin argues that this could

not constitute breach of duty because at the time of closing, the doctrine of merger in Minnesota was "settled" or "apparently well settled." In the alternative, Larkin argues that even if the law of merger was unsettled at the time of the alleged malpractice, it is protected from liability by the rule in *Meagher v. Kavli*, 256 Minn. 54, 97 N.W.2d 370 (1959). We address each of these arguments in turn.

Larkin states that, because the law of merger was well settled, or at least apparently well settled, before our decision in *Bruggeman*, it was, as a matter of law, not a breach of the standard of care to fail to research the issue or advise Jerry's of the issue. While a case may arise in which an attorney's failure to consider or revisit settled law is, as a matter of law, not a breach of the attorney's duty to the client, this is not such a case. First, Jerry's presented expert testimony at trial stating that Larkin's actions fell below the standard of care, and we must view the evidence in a light most favorable to Jerry's. Second, Larkin has cited no Minnesota precedent holding, as a matter of law, that no breach of the duty of care exists here. Finally, the case law Larkin does cite as support is distinguishable. Each of the relevant cases cited by Larkin deals with a "change in the law" that reversed the prevailing practice among attorneys or altered the law as previously established by the court of last resort. Our decision in *Bruggeman* did neither. In *Bruggeman*, we specifically stated that "[w]e have not squarely addressed, until now, whether agreements to perform acts subsequent to closing are governed by the merger doctrine." 591 N.W.2d at 709. We noted that in a 1914 decision, we had stated in dicta that the merger rule " 'does not necessarily apply to acts not made conditions precedent, and are to be performed in the future, and

continue as a charge upon the estate granted.'" *Id.* (quoting *In re Brown's Estate,* 126 Minn. 359, 363, 148 N.W. 121, 122 (1914)). For these reasons, we reject Larkin's argument that, due to the state of merger law, no jury question exists regarding whether Larkin's representation fell below the standard of care.·

■■ In the alternative, Larkin argues that even if we determine the law of merger to have been *unsettled* before *Bruggeman,* Larkin is protected from liability under the rule in *Meagher v. Kavli.* In *Meagher,* we held that a lawyer could not be held liable for malpractice for failure to object to an exhibit where that failure was later, by a divided court, held to constitute waiver. *Meagher,* 256 Minn. at 60–61, 97 N.W.2d at 375 (noting, in addition, that plaintiff failed to show any causation between alleged negligence and claimed damages). In reaching this holding, we stated:

> It is well settled that: "An attorney who acts in good faith and in an honest belief that his advice and acts are well founded and in the best interest of his client is not answerable for a mere error in judgment or for a mistake in a point of law which has not been settled by the court of last resort in his State and on which reasonable doubt may be entertained by well-informed lawyers."

*Id.* (quoting *Hodges v. Carter,* 239 N.C. 517, 80 S.E.2d 144, 146 (1954)). In more recent cases, we have made it clear that a lawyer must act with some level of reasonable care to be protected by the rule in *Meagher.* See *Wartnick v. Moss & Barnett,* 490 N.W.2d 108, 113 (Minn.1992) ("[A] professional must use reasonable care to obtain the information needed to exercise his or her professional judgment, and failure to use such reasonable care would be negligence, even if done in good faith."); *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 693 (Minn.1980) (per curiam) (stating that case did "not involve mere error of judgment" where "gist of plaintiffs' claim is that [attorney] failed to perform the minimal research that an ordinarily prudent attorney would do" in a similar situation). Because Larkin admits that it neither raised the issue of merger with Jerry's nor conducted legal research on the issue prior to Bruggeman's attempt to exercise the buy-back option, under the rules established in *Wartnick* and *Togstad,* a fact question remains about whether Larkin exercised sufficient care in forming its judgment to be protected by the rule in *Meagher.*[1]

In light of the evidence that Larkin did not research or raise the issue of merger with Jerry's before Bruggeman's attempt to buy back the property and the expert testimony presented by Jerry's, we hold that a fact question exists regarding whether Larkin breached its duty to Jer-

---

1. Larkin argues that attorneys need not conduct legal research to exercise judgment. While this may be true, it clouds the real issue, as identified in *Wartnick* and *Togstad,* of whether Larkin *exercised reasonable care* in forming that judgment. In addition, the record is not clear on whether Stoltman even considered the issue of merger before Bruggeman's attempt to exercise his buy-back option. Larkin argues that Stoltman's testimony demonstrates that he thought the Bruggeman option had merged and was no longer enforceable. In portions of his testimony, Stoltman indicated, however, that he had not considered the issue of merger *at all* prior to Bruggeman's attempt to exercise the option. While Stoltman did at times state that he did not look into the issue of merger because "the law was well-settled on that point and there was no need to do so," viewing Stoltman's testimony in a light most favorable to Jerry's, a fact issue exists about whether Stoltman *considered* the merger issue, as well as whether any consideration he did give the issue met the standard of care.

ry's sufficient to defeat Larkin's motion for a directed verdict.

## II.

■ As noted above, the fourth element in a legal malpractice action has, in the past, been formulated as "but for defendant's conduct the plaintiff would have been successful in the prosecution or defense of the action." *Blue Water Corp.,* 336 N.W.2d at 281. We have traditionally applied the fourth element in cases in which the alleged injury was damage to or loss of a cause of action belonging to the plaintiff. *See, e.g., Togstad,* 291 N.W.2d at 692, 694 (stating plaintiff must produce sufficient evidence that plaintiff would have been successful in medical malpractice action before plaintiff is entitled to damages for attorney's negligent failure to warn about statute of limitations). In this case, the court of appeals held that the fourth element was "inapplicable" because Jerry's alleged malpractice during a transactional matter—not malpractice in the course of litigation. *Jerry's Enters., Inc.,* 691 N.W.2d at 491–92. Larkin and amici appeal this modification of the four-element test for legal malpractice, arguing that Jerry's should not be relieved from making a "but for" causational showing between Larkin's alleged negligence and Jerry's injury.[2] This issue involves a pure question of law, and we review it de novo.

*See Anderson v. Dep't of Natural Res.,* 693 N.W.2d 181, 186 (Minn.2005).

■ In legal malpractice cases not involving damage to or loss of a cause of action, we have previously indicated that a plaintiff must demonstrate "but for" causation between defendant's negligence and plaintiff's injury in order to show proximate causation. *See Ross v. Briggs & Morgan,* 540 N.W.2d 843, 847 (Minn.1995) (holding that because plaintiff could not establish that his insurance company would have had a duty to defend his claim, he could not establish that defendant law firm's failure to tender his claim to insurance company proximately caused his loss); *Blue Water Corp.,* 336 N.W.2d at 282–84 (holding that plaintiffs could not recover for attorney's negligent failure to file bank charter application where the evidence did not show that if application had been timely filed, charter would have been granted). We hold that in an action for legal malpractice arising out of representation in transactional matters, the fourth element of the cause of action is modified to require a plaintiff to show that, but for defendant's conduct, the plaintiff would have obtained a more favorable result in the underlying transaction than the result obtained.[3]

■ In this case, viewing the evidence in a light most favorable to Jerry's, Jerry's

---

**2.** A careful reading of the decision of the court of appeals, however, indicates that the court of appeals likely did not intend to do away with this requirement. While the court stated that "more traditional concepts of proximate cause, rather than 'but for' causation, are used" in malpractice suits stemming from representation in transactional matters, in its discussion of proximate cause the court also held that "there is sufficient record evidence to create a fact question for the jury regarding whether Jerry's suffered damages as a result of [Larkin's] acts." *Jerry's Enters.,*

*Inc.,* 691 N.W.2d at 491, 493. It appears likely that the court of appeals did not eliminate "but for" causation from Jerry's burden, but merged its "but for" inquiry into the "proximate cause" element of legal malpractice.

**3.** A similar approach has been adopted by the California Supreme Court. *See Viner v. Sweet,* 30 Cal.4th 1232, 135 Cal.Rptr.2d 629, 70 P.3d 1046, 1054 (2003).

has provided sufficient evidence to create a fact question for the jury regarding whether, "but for" Larkin's alleged negligence, Jerry's would have obtained a more favorable result in the Bruggeman transaction than the result obtained. Jerry's argues that if Larkin had informed Jerry's of the possible cloud on its title to the property, it would have begun construction within the two-year time period and prevented Bruggeman from exercising his buy-back option. At trial, Shadduck, the president of Jerry's, testified that had he known of the possible survival of the buy-back option, Jerry's would have ensured that the option was extinguished, either by beginning construction or otherwise. During adverse direct examination, Stoltman testified that had he told Jerry's about the potential survival of the buy-back option, Jerry's could have begun construction within two years of closing and extinguished the option. After Bruggeman's exercise of the buy-back option, Jerry's paid Larkin over $170,000 in legal fees to defend its title. Eventually Jerry's paid Bruggeman $4.2 million to keep the property. In light of this evidence, a question of fact exists regarding whether Larkin's conduct was the "but for" cause of Jerry's damages.

### III.

The final issue ·we consider is whether the district court erred by ruling that Larkin could introduce evidence regarding the state of the merger doctrine at the time of the alleged malpractice. The court of appeals upheld the district court's ruling, holding that such evidence was relevant in determining the standard of care. *Jerry's Enters., Inc.*, 691 N.W.2d at 494. Jerry's seeks to reverse the district court's ruling, arguing that the ruling impermissibly allows jurors to decide a question of law. A district court has wide discretion in determining the relevancy of evidence, and its decision to admit evidence under Minn. R. Evid. 403 will only be reversed for clear abuse of discretion. *State v. Schulz*, 691 N.W.2d 474, 477 (Minn.2005).

"Evidence is relevant * * * when it, in some degree, advances the inquiry." *Id.* at 478. Questions of law are generally not to be decided by a jury. *See Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 425 (Minn.1983). Jerry's argues that, since Larkin admits it did not research the state of merger law prior to Bruggeman's attempt to exercise his option, such evidence about the state of the merger law is irrelevant. However, Larkin seeks to use this evidence to demonstrate that, due to the state of merger law at the time of the alleged malpractice, its failure to research the issue or discuss the issue with Jerry's did not breach the standard of care. We have held that, in legal malpractice cases, whether the standard of care has been breached is generally a question of fact for the jury. *See Admiral Merchs. Motor Freight, Inc.*, 494 N.W.2d at 266–67. Because whether Larkin's conduct fell below the standard of care is a jury question, the district court's decision to admit evidence of the state of merger law was not a clear abuse of discretion.

Affirmed as modified.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.