**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1254**

Kenneth A. Roseland, et al.,
Appellants,

vs.

Joseph A. Wentzell, Attorney at Law, et al.,
Respondents,

Richard L. Kusick, et al.,
Respondents,

and

Roseland Acres, LLC, et al.,
third party plaintiffs,
Respondents,

vs.

Eric Brever, Attorney at Law, et al.,
third party defendants.

**Filed May 18, 2015
Affirmed in part, reversed in part, and remanded
Schellhas, Judge**

Pine County District Court
File No. 58-CV-12-479

Kenneth A. Roseland, et al., Moose Lake, Minnesota (pro se appellants)

Charles E. Jones, Melissa Dosick Riethof, Meagher & Geer, PLLP, Minneapolis, Minnesota (for respondents Joseph A. Wentzell, et al.)

Robert L. Meller, Jr., Joseph J.W. Phelps, Best & Flanagan LLP, Minneapolis, Minnesota (for respondents Richard L. Kusick, et al. and Roseland Acres, LLC, et al.)

Richard J. Thomas, Burke & Thomas, PLLP, Arden Hills, Minnesota (for third party defendants Eric Brever, et al.)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

**S Y L L A B U S**

An equitable mortgage created during the foreclosure process does not constitute a foreclosure reconveyance under Minn. Stat. § 325N.10, subd. 3 (2014), when the mortgage does not allow the mortgagee to acquire title to the property by redeeming the property as a junior lienholder.

A district court may order that mortgaged premises, including agricultural land, be sold as one parcel under Minn. Stat. § 581.04 (2014), if the court determines that a sale as one parcel is most beneficial to the interests of the parties and the mortgagor does not request that tracts be sold separately under Minn. Stat. § 582.042, subd. 3 (2014).

**O P I N I O N**

**SCHELLHAS**, Judge

Appellants challenge summary judgment for respondents on appellants' claims of legal malpractice and statutory violations under Minn. Stat. §§ 325N.01–.18 (2014), Minnesota's home-ownership and equity-protection act (MHOEPA), and on respondent's counterclaim for foreclosure of an equitable mortgage.[1] Appellants also challenge the amount of the judgment against them. We affirm in part, reverse in part, and remand for further proceedings.

---

[1] We apply the most recent version of the statutes in this opinion because the statutes have not been amended in relevant part. *See Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 575 (Minn. 2000) (stating that, generally, "appellate courts apply the law as it exists at the time they rule on a case").

2

# FACTS

Appellants Kenneth and Diana Roseland own farmland identified as parcels A through E in Pine County and parcels F and G in Carlton County.[2] Various improvements are located on the farmland, including Roselands' home on parcel B. To secure loans from First National Bank of Moose Lake, Roselands granted First National mortgages on parcels A, B, and G. Roselands defaulted on their mortgage loans, engaged in unsuccessful mediation with First National, and, in January 2007, retained respondents Joseph Wentzell and Wentzell Law Office P.L.L.C. (individually or collectively, Wentzell) to represent them. Because Roselands did not cure their defaults, First National commenced foreclosure proceedings. Wentzell represented Roselands in petitioning for bankruptcy and later assisted Roselands in objecting to First National's motion to lift the automatic stay as to parcels A, B, and G, arguing that Roselands' reorganization plan required that their farmland not be split.

During the bankruptcy proceedings, Roselands and First National reached agreement regarding the debt repayment, but Roselands initially refused to provide notarized signatures on the written agreement. First National sought reimbursement from Roselands for the expenses it incurred as a result of the delay. Roselands provided First National with a notarized agreement but failed to reimburse First National for its delay expenses. The bankruptcy court lifted the automatic stay and dismissed Roselands' bankruptcy case.

---

[2] In April 2009, the appraised value of the farmland was $1.2 million.

3

In early 2008, First National commenced a foreclosure by advertisement against parcels A and B and a foreclosure by action against parcel G. On May 22, 2008, First National purchased parcels A and B at a sheriff's sale. Wentzell continued to represent Roselands, who understood that they had one year to redeem parcels A and B. Roselands interposed an answer and a usury counterclaim in the foreclosure-by-action proceeding against parcel G. Roselands based their counterclaim on an April 2008 statement from First National that referred to an interest rate of 36%. First National moved for summary judgment and submitted evidence that the 36%-interest-rate reference was a printing error and First National actually never charged Roselands 36% interest on their debt. The district court granted summary judgment to First National and dismissed Roselands' counterclaim.

The parties do not dispute that the last day of the mortgage-foreclosure redemption period for parcels A and B was May 22, 2009. In April, because Roselands had not succeeded in obtaining refinancing to redeem parcels A and B and to satisfy the judgment against parcel G, Wentzell contacted respondents Richard Kusick, Lauris Valtinson, and James Christian, proposing their participation in a transaction that would enable Roselands to redeem the farmland from the mortgage foreclosure and satisfy the judgment.[3] Third-party defendants Eric Brever and Foster & Brever P.L.L.C. (individually or collectively, Brever) represented Kusick, Valtinson, and Christian in the

---

[3] Wentzell was acquainted with Kusick and was listed on a website as a "legal services" partner to a company at which Kusick served as president.

redemption transaction.[4] Brever organized respondent Roseland Acres LLC to enter into the redemption transaction with Roselands. The members of Roseland Acres included Kusick, Valtinson, and Christian. On May 5, 2009, Roselands agreed to sell the farmland to Roseland Acres for $420,472.02. On May 20 and 21, Roseland Acres deposited $421,000 in escrow with a title company to enable Roselands to redeem parcels A and B from foreclosure and satisfy the judgment against parcel G and mortgage debt on other parcels. On May 21, Roselands conveyed the farmland to Roseland Acres by warranty deeds and entered into contracts for deed with Roseland Acres to repurchase the farmland. Roselands agreed to make monthly interest payments of $3,508.33 beginning on June 1, 2009, and a balloon payment of $568,350 on June 1, 2012.

Around October 2010, Roselands stopped making payments. Roseland Acres proceeded with cancellation of the contracts for deed and notified Roselands that they risked eviction if they did not remedy their defaults. Roselands thereafter retained Richard Bosse as new legal counsel and sued Wentzell, Roseland Acres, Kusick, Valtinson, and Christian. Among other relief, Roselands sought (1) a declaration that the redemption transaction constituted an equitable mortgage; (2) a declaration that the redemption transaction was invalid and damages for violations of MHOEPA; and (3) damages against Wentzell under various theories of legal malpractice. Roseland Acres counterclaimed for relief including foreclosure of an equitable mortgage. The district court allowed Roseland Acres, Kusick, Valtinson, and Christian to implead Brever as a

---

[4] Wentzell had been a partner in a firm while Brever was a clerk at the firm. Wentzell later maintained a separate office in the same building as Brever.

third-party defendant on claims that included legal malpractice. Bosse withdrew as attorney for Roselands on November 4, 2013, and filed notice of claim and intent to hold attorney liens on the farmland. *See Roseland v. Wentzell*, No. A14-1699, slip op. at 4 (Minn. App. May 18, 2015).

Wentzell moved for summary judgment on Roselands' claims against him, and Roseland Acres, Kusick, Valtinson, and Christian moved for summary judgment on Roselands' claims, for summary judgment on Roseland Acres's counterclaims, and for a decree of foreclosure of an equitable mortgage. The district court granted summary judgment to Wentzell, Roseland Acres, Kusick, Valtinson, and Christian on Roselands' claims; determined that the redemption transaction resulted in an equitable mortgage on which Roselands had defaulted; granted summary judgment to Roseland Acres on its counterclaim for foreclosure of the equitable mortgage; and awarded a decree of foreclosure of the equitable mortgage.

This appeal follows.

## ISSUES

I.   Did the district court err by concluding that MHOEPA does not apply to Roseland Acres's equitable mortgage?

II.  Did the district court err by ordering the sale of the farmland as one parcel or one parcel in Carlton County and one parcel in Pine County under Minn. Stat. § 581.04 (2014)?

III. Did the district court err by awarding interest on Roseland Acres's payments of property insurance and property taxes on the farmland or in calculating late charges?

IV.  Did the district court err by dismissing Roselands' malpractice claims against Wentzell on summary judgment?

6

**ANALYSIS**

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, establishes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Citizens State Bank Norwood Young Am. v. Brown*, 849 N.W.2d 55, 61 (Minn. 2014); *see also* Minn. R. Civ. P. 56.03. "[Appellate courts] review de novo a district court's grant of summary judgment," *Dukowitz v. Hannon Sec. Servs.*, 841 N.W.2d 147, 150 (Minn. 2014), "determin[ing] whether any genuine issues of material fact exist and whether the district court erred in its application of the law," *Bearder v. State*, 806 N.W.2d 766, 770 (Minn. 2011) (quotation omitted).

## I. The district court did not err by concluding that MHOEPA does not apply to Roseland Acres's equitable mortgage.

The parties do not dispute the district court's conclusion that the redemption transaction resulted in an equitable mortgage in favor of Roseland Acres against the farmland. Roselands argue that the district court erred by concluding that MHOEPA does not apply to Roseland Acres's equitable mortgage. "The Legislature enacted MHOEPA in 2004 to regulate foreclosure reconveyances . . . ." *Graves v. Wayman*, 859 N.W.2d 791, 797 (Minn. 2015). "Foreclosure reconveyance" is defined as

> a transaction involving . . . the transfer of title to real property by a foreclosed homeowner during a foreclosure proceeding, either by transfer of interest from the foreclosed homeowner or by creation of a mortgage or other lien or encumbrance during the foreclosure process that allows the acquirer to obtain title to the property by redeeming the property as a junior lienholder . . . .

7

Minn. Stat. § 325N.10, subd. 3 (quotation omitted). "[Appellate courts] review the interpretation of a statute de novo." *Seagate Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 757 (Minn. 2014). "The goal of statutory interpretation is to effectuate the intent of the Legislature." *Staab v. Diocese of St. Cloud*, 853 N.W.2d 713, 716 (Minn. 2014). "If the Legislature's intent is clear from the unambiguous language of the statute, [appellate courts] apply the statute according to its plain meaning." *Id.* at 716–17.

Roselands do not contest that, because the district court declared the redemption transaction an equitable mortgage, no transfer of title occurred. They argue that the equitable mortgage was a foreclosure reconveyance under section 325N.10, subdivision 3, because it was created "during the foreclosure process." But a mortgage does not constitute a foreclosure reconveyance merely because it is created during a foreclosure process. A mortgage that is created during a foreclosure process only constitutes a foreclosure reconveyance if it "allows the acquirer to obtain title to the property *by redeeming the property as a junior lienholder*." *See* Minn. Stat. § 325N.10, subd. 3 (emphasis added). Here, the equitable mortgage did not allow Roseland Acres to acquire title to the farmland by redeeming the farmland as a junior lienholder. The implication of Roselands' argument is that any mortgage created during the foreclosure process is a foreclosure reconveyance, and such a conclusion would prevent property owners with redemption rights from obtaining mortgage financing for the purpose of redeeming their property from foreclosure.

We also reject Roselands' assertion that the redemption transaction occurred during foreclosure proceedings. Foreclosure proceedings end when mortgagors redeem

8

their property from foreclosure. *See Coffman v. Christenson*, 102 Minn. 460, 463, 113 N.W. 1064, 1065 (1907) ("If the redemption be made by the mortgagor or owner of the land, the foreclosure is annulled . . . ."). Redemption occurred on May 20, 2009, when First National issued certificates of redemption. The certificates of redemption reflect that Roselands are the redeeming parties and are the fee owners of the farmland. On May 21, 2009, Roselands conveyed the farmland to Roseland Acres by warranty deeds and entered into contracts for deed with Roseland Acres to repurchase the farmland. The redemption transaction occurred after the foreclosure proceeding ended. We conclude that the district court did not err by concluding that the equitable mortgage was not a foreclosure reconveyance under section 325N.10, subdivision 3, and that MHOEPA does not apply to the equitable mortgage.

II.     **The district court did not err by ordering the sale of the farmland as one parcel or one parcel in Carlton County and one parcel in Pine County under Minn. Stat. § 581.04.**

Minnesota Statutes section 581.04 provides that "[w]hen it appears that the sale of the whole of the mortgaged premises in one parcel will be most beneficial to the interests of the parties, the court may adjudge that the same be so sold, notwithstanding that they consist of distinct farms or tracts." The district court issued an order as follows:

> Because the sale of the whole of the [farmland] in one parcel will be most beneficial to the interests of the parties, or at least in one parcel with respect to those parcels located in Carlton County and those parcels located in Pine County, the [farmland] shall be sold as one parcel, as the case may be, notwithstanding that the [farmland] consists of separate tracts.

9

Roselands argue that the district court erred by determining that selling the farmland as one parcel or one parcel in Carlton County and one parcel in Pine County would be most beneficial to the parties. Roselands contend that section 581.04 directly contradicts Minn. Stat. § 582.042, subd. 1 (2014), which provides that "[i]f a mortgage on real property that is agricultural land is foreclosed and the property contains separate tracts, the person in possession of the property must be notified by the foreclosing mortgagee that the separate tracts may be sold and redeemed separately." Roselands do not dispute that Roseland Acres provided them this notice, and they do not dispute that they did not comply with Minn. Stat. § 582.042, subd. 3 (2014), which requires the person being foreclosed to designate by legal description each of the tracts to be sold separately and, in a foreclosure by action under chapter 581, to provide the court with a copy of the legal descriptions of the tracts to be sold separately. *See* 6A Steven J. Kirsch, *Minnesota Practice* § 50.9 (3d ed. 1990) ("[U]nless a mortgagor has requested that the property be sold in separate tracts by providing the court legal descriptions of each tract to be sold separately, and it appears that the sale of the whole of the mortgaged premises in one parcel will be most beneficial to the parties, the court may adjudge that the same be so sold, notwithstanding that they consist of distinct farms or tracts." (footnote omitted) (quotation omitted)).

We conclude that sections 581.04 and 582.042, subdivision 1, do not conflict, and we further conclude that the district court did not err by finding that the sale of the farmland as one parcel or one parcel in each county would be most beneficial to the interests of the parties. Roseland Acres submitted Kenneth Roseland's July 2, 2007

10

affidavit and September 14, 2007 deposition testimony, in which Kenneth Roseland stated that "[t]he entire amount of the property is needed to reorganize," "the entire parcel is needed to function as a farm," and that to sell off part of the farmland would be "kind of like cutting off your nose to spite your face. It can be done, but it's not logical." Based on the evidence and Roselands' failure to designate tracts to be sold separately, as required by section 582.042, subdivision 3, the district court did not err by ordering the farmland to be sold as one parcel or one parcel in Carlton County and one parcel in Pine County.

**III.    The district court erred in calculating the late charges that are included in the judgment against Roselands.**

The district court awarded Roseland Acres $1,952.44 in accrued interest on Roseland Acres's payments of $3,409.74 for property insurance and $5,269.37 for property taxes. The district court also awarded Roseland Acres $77,041.17 in late charges for late payments on the equitable mortgage. Roselands argue that the district court erred (1) by awarding Roseland Acres interest on property-insurance and property-tax payments made by Roseland Acres in connection with the farmland and (2) in its calculation of late fees. The equitable mortgage provides that Roselands must pay taxes and insurance on the farmland and that, if they fail to pay "any sum of money required," Roseland Acres may pay those amounts, which "shall be payable at once, with interest." It also provides that "[i]f any payment is not received by [Roseland Acres] within fifteen (15) days of the date when due, [Roselands] shall additionally pay to [Roseland Acres], to the extent allowed by law, a late charge of four percent (4%) of the amount of the

11

delinquent payment." Neither party argues that the language is ambiguous, and we agree that the language is unambiguous.

"The construction and effect of an unambiguous contract are . . . questions of law." *Yang v. Voyagaire Houseboats, Inc.*, 701 N.W.2d 783, 788–89 (Minn. 2005). "[Appellate courts] assign unambiguous contract language its plain meaning." *Savela v. City of Duluth*, 806 N.W.2d 793, 796–97 (Minn. 2011). "[P]roper interpretation of [contracts] is a question of law that is subject to de novo review." *Id.* at 796 (citation omitted). Based on the clear and unambiguous language in the equitable mortgage, we conclude that the district court did not err by awarding Roseland Acres interest on the property-insurance and property-tax payments made by Roseland Acres after Roselands failed to make those payments.

In calculating the award of $77,041.17 for late charges, the district court applied one late charge for each month in which a payment was late, as follows: "Months late for all payments = 549 (12/10 payment is 39 months late, 01/11 payment is 38 months late, etc.)." To support the court's award of late charges, Roseland Acres relies on an unpublished opinion of this court for the proposition that Minnesota courts have interpreted similar contract language to allow for a late charge for each month that the payment is late. "Unpublished opinions of the Court of Appeals are not precedential." Minn. Stat. § 480A.08, subd. 3 (2014); *see also Vlahos v. R & I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 & n.3 (Minn. 2004) (noting that district court's reliance on unpublished opinion of this court "was misplaced, both as a matter of law and as a matter of practice," and "stress[ing] that unpublished opinions of the court of appeals are not

precedential"). We conclude that the late-charge provision in the equitable mortgage provides for a single late charge for each late payment, not a recurring monthly late charge, and that the district court therefore erred in its calculation.

**IV.    The district court did not err by dismissing Roselands' malpractice claims against Wentzell on summary judgment.**

Roselands argue that the district court erred by granting summary judgment to Wentzell on Roselands' claims of legal malpractice. To prevail on a claim of legal malpractice involving damage to or loss of a cause of action, a plaintiff must prove: "(1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of the plaintiff's damages; and (4) that but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quotation omitted). In cases arising out of representation in transactions, "the fourth element . . . is modified to require a plaintiff to show that, but for defendant's conduct, the plaintiff would have obtained a more favorable result in the underlying transaction than the result obtained." *Id.* at 819. "If the plaintiff does not provide sufficient evidence to meet all of these elements, the claim fails." *Id.* at 816.

Roselands argue that "[t]he sheer volume of the[] facts and pieces of evidence presented by each party is an indication that material fact issues do exist." Their argument is not persuasive. "[T]o oppose a motion for summary judgment successfully, a party is required to extract *specific*, admissible facts from the record that demonstrate that

13

a genuine issue of material fact exists." *Beecroft v. Deutsche Bank Nat'l Trust Co.*, 798 N.W.2d 78, 82 (Minn. App. 2011) (quotation omitted), *review denied* (Minn. July 19, 2011). That party must "establish that there is a genuine issue of material fact through substantial evidence." *Osborne v. Twin Town Bowl, Inc.*, 749 N.W.2d 367, 371 (Minn. 2008) (quotation omitted).

In addition to the "sheer volume" of evidence, Roselands rely on their affidavit of expert disclosure in assigning error to the district court's dismissal of their legal malpractice claims on summary judgment. Under Minn. Stat. § 544.42 (2014), an affidavit of expert disclosure must

> provide some meaningful information, beyond conclusory statements, that (1) identifies each person the attorney expects to call as an expert; (2) describes the expert's opinion on the applicable standard of care, as recognized by the professional community; (3) explains the expert's opinion that the defendant departed from that standard; and (4) summarizes the expert's opinion that the defendant's departure was a direct cause of the plaintiff's injuries.

*Brown-Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 219 (Minn. 2007). "If the affidavits contain 'nothing more than broad and conclusory statements as to causation,' they are legally insufficient to satisfy the professional-malpractice statute." *Schmitz v. Rinke, Noonan*, 783 N.W.2d 733, 746 (Minn. App. 2010) (quoting *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 578 (Minn. 1999) (applying Minn. Stat. § 145.682)), *review denied* (Minn. Sept. 21, 2010).

Roselands' affidavit of expert disclosure identifies Roselands' legal expert, who opines that Wentzell caused damages to Roselands by, among other things, (1) failing to

challenge First National's foreclosures, (2) failing to assert a counterclaim against First National, (3) failing to protect Roselands from MHOEPA violations, and (4) causing Roselands to incur additional attorney fees. But the expert affidavit does not include the legal expert's opinion about the merits or likelihood of success on any of the alleged claims of malpractice. Nor does the expert affidavit include adequate explanation of how Wentzell's representation of Roselands caused Roselands to incur additional attorney fees.

We conclude that Roselands' affidavit of expert disclosure fails to set out a prima facie case of legal malpractice against Wentzell and that the district court did not err by granting summary judgment to Wentzell.

## D E C I S I O N

The district court did not err by concluding that MHOEPA did not apply to the equitable mortgage, by ordering that the farmland be sold as one parcel or one parcel in Carlton County and one parcel in Pine County, by awarding Roseland Acres interest on the property-insurance and property-tax payments it made in connection with the farmland, or by dismissing Roselands' legal-malpractice claims against Wentzell on summary judgment. Because we also conclude that the district court erred in its calculation of late charges included in the judgment, we reverse and remand that issue to the court for proper calculation of late charges and amendment of the judgment.

**Affirmed in part, reversed in part, and remanded.**