# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2912
_____

Gerber Products Company

*Plaintiff - Appellant*

v.

Mitchell Williams Selig Gates & Woodyard, PLLC; Byron Freeland

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: October 18, 2021
Filed: March 11, 2022
_____

Before COLLOTON, ERICKSON, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

This case requires us to decide a novel legal-malpractice question under Arkansas law. What must a plaintiff show to recover the attorney fees it spent trying to fix previous counsel's mistakes? The answer, according to the district court, is that the result of the underlying proceeding would have been different. We disagree, so we reverse and remand for further proceedings.

I.

The parties' dispute began in Arkansas state court, after Gerber Products Company hired Mitchell Williams Selig Gates & Woodyard, PLLC to defend a lawsuit. In the initial phases of discovery, Gerber produced 2,700 pages of documents. Not long after, Mitchell Williams received a notification from the other side that no lawyer wants to get: some of the documents were privileged. Fortunately for Gerber, Mitchell Williams was able to get those documents back. But to avoid future problems, the firm promised to use a privilege log.

Discovery continued, and so did Mitchell Williams's mistakes. After the state trial court granted an unopposed motion to compel, Gerber produced another 96,000 pages of documents. Still no privilege log. Then came several thousand more pages. This time, an eight-page privilege log accompanied them. Finally, after one last motion to compel, which once again went unanswered, Gerber turned over the last batch of documents, with a privilege log that had grown to 13 pages.

The privilege logs were too little, too late. Opposing counsel successfully argued that Gerber had already waived its attorney-client privilege by failing to invoke it in time, producing privileged documents, and creating an incomplete privilege log. After the trial court denied a protective order, Gerber fired Mitchell Williams and hired new counsel.

New counsel hoped to turn things around by filing an interlocutory appeal on Gerber's behalf. Although it argued that Gerber deserved a protective order, the Arkansas Court of Appeals affirmed the decision to deny one. *See Gerber Prods. Co. v. CECO Concrete Constr., LLC*, 533 S.W.3d 139, 145 (Ark. Ct. App. 2017).

With a hefty legal bill, Gerber had little to show for it. Before trial was set to begin in the state-court case, Gerber sued Mitchell Williams and one of its attorneys, Byron Freeland, for malpractice in federal court. The remedy it sought was unusual:

-2-

the more than $75,000 it had spent in "corrective attorney fees" in an attempt to fix the firm's mistakes.

The district court granted the firm's motion for summary judgment. Although it rejected the argument that the federal lawsuit was filed beyond the statute of limitations, the court concluded a different timing problem existed. Gerber filed its lawsuit against Mitchell Williams before the state-court case had gone to trial, so there was no way it could show that "the result in the underlying action would have been different." *Evans v. Hamby*, 378 S.W.3d 723, 727 (Ark. 2011). We must decide whether the district court's ruling accurately reflects Arkansas law.

## II.

We review the district court's decision de novo. *See Anheluk v. Ohlsen*, 459 F.3d 874, 877 (8th Cir. 2006). "Summary judgment [was] appropriate [if] the evidence, viewed in [the] light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (citation omitted).

## A.

Attorney-malpractice claims date back to at least 1850 in Arkansas. *See Pennington's Ex'rs v. Yell*, 11 Ark. 212 (1850). Just like in any other negligence action, the plaintiff must establish proximate cause to prevail. *See* Restatement (Third) of the Law Governing Lawyers § 53 cmt. a (Am. Law Inst. 2000) ("Legal-malpractice actions . . . are subject to generally applicable principles of causation and damages."); *see also Callahan v. Clark*, 901 S.W.2d 842, 847 (Ark. 1995) (discussing proximate cause). In Arkansas, "[p]roximate cause is defined as 'that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the injury, and without which the result would not have occurred.'" *Madden v. Aldrich*, 58 S.W.3d 342, 353–54 (Ark. 2001) (emphasis omitted) (quoting

*City of Caddo Valley v. George*, 9 S.W.3d 481, 487 (Ark. 2000)). What it requires, in other words, is an unbroken causal chain between an attorney's negligence and the injury. *See City of Caddo Valley*, 9 S.W.3d at 487.

Arkansas courts have repeatedly addressed a common scenario: a party loses and then blames its attorney. In one example, an attorney failed to plead a usury defense, which led to a sizable judgment on a debt. *See Evans*, 378 S.W.3d at 726–27. In another, when an attorney did not perfect an appeal, the client lost out on a larger child-support award. *See Davis v. Bland*, 238 S.W.3d 924, 925 (Ark. 2006). "The injury" was losing, so the plaintiff had to connect the bad result in an "unbroken" chain to the attorney's negligence. *City of Caddo Valley*, 9 S.W.3d at 487 (citation omitted). Establishing proximate cause made the "merits of the underlying case" a "part of the proof of the malpractice case," creating a "case within a case." *Evans*, 378 S.W.3d at 727.

There is no case within a case here because Gerber's theory has nothing to do with how its state-court lawsuit will turn out. Instead, it wants to get back the more than $75,000 it spent trying to regain its attorney-client privilege after Mitchell Williams negligently waived it. *See John Kohl & Co. v. Dearborn & Ewing*, 977 S.W.2d 528, 534 (Tenn. 1998) (describing "corrective fees" as the money paid to new counsel "to correct the problem caused by the negligent lawyer"). In these unusual circumstances, is there still a way for Gerber to establish proximate cause? *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010) (discussing the "*Erie*-educated guess" we are supposed to make in diversity cases).

In our view, there is. Applying "generally applicable principles of causation and damages," Restatement (Third) of the Law Governing Lawyers § 53 cmt. a (Am. Law Inst. 2000), Gerber will have to show that Mitchell William's negligence led, in a "natural and continuous sequence," to the extra fees it paid, *Madden*, 58 S.W.3d at 353 (citation omitted). *See Travis v. Sup. Ct. Comm. on Pro. Conduct*, 306 S.W.3d 3, 7 (Ark. 2009) (quoting the Restatement (Third) of the Law Governing Lawyers in an attorney-discipline case); 3 Ronald E. Mallen, Legal Malpractice § 21:8 (2022

-4-

ed.) ("[A]n attorney is liable for all damages proximately caused by the wrongful act or omission," though the "application of these rules depends on the nature of the injury."). If Gerber can also demonstrate that it "would not have incurred the fees in the absence of the [firm's] negligence," it will have completed the necessary causal chain. *Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1281 (Alaska 2013) (quotation marks omitted); *see also Madden*, 58 S.W.3d at 353 (explaining why proximate cause requires a "continuous" causal chain between the negligence and the injury, which would otherwise "not have occurred").

It makes sense that proving a case-within-a-case is not a hard-and-fast requirement because an attorney's negligence can result in injuries other than a loss in court. Take the Restatement's example of an attorney's negligent disclosure of a company's trade secrets. Restatement (Third) of the Law Governing Lawyers § 53 cmt. b (Am. Law Inst. 2000). In those circumstances, even though there is no case within a case, the negligent attorney "might [still] be liable for the harm to the client's business caused by the disclosure," presumably by establishing an unbroken causal chain between the attorney's negligence and some identifiable monetary harm, such as a loss of profits. *Id.* If the injury has nothing to do with an underlying judgment, in other words, the plaintiff can establish proximate cause "*without* proving the results of a trial." *Id.* (emphasis added); *see also Suder v. Whiteford, Taylor & Preston, LLP*, 992 A.2d 413, 421 (Md. 2010) (holding that in these circumstances, "the trial-within-a-trial approach is not necessary to prove malpractice").

Of the few courts that have addressed a situation like this one, most have reached the same conclusion that we do: corrective fees are available, even without an underlying judgment.[1] Indeed, Mitchell Williams cannot identify a single court

---

[1]*See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1281 (Alaska 2013) ("[W]e agree that a legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence." (quotation marks omitted)); *Jordache Enters., Inc. v.*

of last resort that has gone the other way. *But see Hedrick v. Tabbert*, 722 N.E.2d 1269, 1273 (Ind. Ct. App. 2000) (stating, without addressing the majority rule, that "Indiana courts have consistently held that a party proves the extent of his harm by showing how he was injured by the outcome of the underlying litigation, not by showing what action he took as a result of that outcome" (emphasis omitted)). There is no reason to believe that the Arkansas Supreme Court will be the first.

## B.

Even if Gerber can establish proximate cause, did it make it to the courthouse in time? Before the district court, Mitchell Williams argued that all of the allegedly negligent disclosures fell beyond Arkansas's three-year statute of limitations. *See* Ark. Code Ann. § 16-56-105. The district court disagreed, and so do we.

The only acts falling within Arkansas's three-year statute of limitations were those that occurred on or after January 15, 2016, which was exactly three years before Gerber filed its malpractice suit. *See Moix-McNutt v. Brown*, 74 S.W.3d 612,

*Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1070 (Cal. 1998) ("recogniz[ing] the established rule that attorney fees incurred as a direct result of another's tort are recoverable damages"); *Nettleton v. Stogsdill*, 899 N.E.2d 1252, 1261 (Ill. App. Ct. 2008) ("[W]e hold that a legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence."); *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 388 (N.Y. 2007) (explaining that legal-malpractice "damages may include litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct" (quotation marks omitted)); *Larson v. Norkot Mfg., Inc.*, 653 N.W.2d 33, 36 (N.D. 2002) (stating that a legal-malpractice plaintiff can sue for "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct," including "attorney fees necessitated by his attorneys' negligence" (quotation marks omitted)); *Krahn v. Kinney*, 538 N.E.2d 1058, 1061–62 (Ohio 1989) (holding that the "extra attorney fees" a party spent "rectifying [an attorney's] failure to appear" at a commission hearing formed the basis of a valid cause of action "regardless of whether the ultimate penalty imposed by the commission [was] reversed").

613 (Ark. 2002) (explaining that the statute of limitations "begins to run, in the absence of concealment of the wrong, when the negligence occurs, and not when it is discovered"). Fortunately for Gerber, one set of documents was turned over in February 2016, just within the three-year period. If Gerber can establish on remand that Mitchell Williams was negligent in February 2016 and turning over the last batch of documents proximately caused its injury, then its legal-malpractice claim can move forward.[2]

## III.

We accordingly reverse the judgment of the district court and remand for further proceedings.

ERICKSON, Circuit Judge, concurring and dissenting.

This diversity action presents only questions of state law. It involves the attempted recovery of attorney's fees incurred while unsuccessfully seeking to claw-back inadvertently produced privileged documents and the protection of unproduced privileged documents. The attorney's fees claim in this purported legal malpractice case exceeds $500,000. Although an experienced district judge familiar with

_____

[2]Mitchell Williams argues that the Arkansas Court of Appeals' characterization of Gerber's claims of privilege as "woefully overdue" must mean that the malpractice claims accrued earlier, no later than July 2015. *Gerber*, 533 S.W.3d at 144. We disagree, if for no other reason than the law-of-the-case doctrine applies only within the same case, not to wholly separate suits in different courts. *See Green v. George's Farms, Inc.*, 378 S.W.3d 715, 720 (Ark. 2011) ("The doctrine provides that a decision of an appellate court establishes the law of the case for the trial upon remand and for the appellate court itself upon subsequent review."). Nor does issue preclusion apply. Nothing in the court's opinion tells us whether the firm negligently produced privileged documents in February 2016. *See Craven v. Fulton Sanitation Serv., Inc.*, 206 S.W.3d 842, 844 (Ark. 2005) (requiring that "the issue sought to be precluded . . . be the same as that involved in the prior litigation"); *see also Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 758 (8th Cir. 2003) ("We look to state law in determining whether to apply issue preclusion.").

Arkansas law concluded that this type of malpractice claim is not cognizable under Arkansas law, the majority has decided to rely on § 53 of the Restatement (Third) of the Law Governing Lawyers and substantially expand the established parameters for legal malpractice claims in Arkansas.  I would not do so.

The Arkansas Supreme Court accepts certified questions involving Arkansas law from a federal court of the United States when all facts material to the question of law are undisputed and there are "special and important reasons" to do so. Longview Prod. Co. v. Dubberly, 99 S.W.3d 427, 429 (Ark. 2003); see Rule 6-8(a) of the Rules of Supreme Court and Court of Appeals.  The first ground articulated by the Arkansas Supreme Court involves a question of law that is one of first impression and is of "substantial public importance as to require a prompt and definitive resolution by" the Arkansas Supreme Court.  Id.  In situations "[w]here we find no state law precedent on point and where the public policy aims are conflicting[,] the case may properly be certified to the state court."  Hatfield, by Hatfield v. Bishop Clarkson Mem'l Hosp., 701 F.2d 1266, 1267 (8th Cir. 1983) (en banc).  I believe the legal question in this case meets the requisite criteria for certification.  Before I would expose a law firm to this previously uncharted type of malpractice claim with potential damages exceeding $500,000, I would take the rare step of certifying the question to the Arkansas Supreme Court, even though neither party made such a request.

Absent certification, I would defer to the expertise of the district judge sitting in Arkansas, as I believe he is a better predictor of Arkansas law than we are.  "The function of a federal court is not to choose the rule that it might follow were this a question of federal law, but rather to adopt the rule which it believes the state court would apply."  Hatfield, 701 F.2d at 1267.  The majority identifies in a footnote the highest courts in a handful of states that it believes have embraced this type of malpractice claim.  I am not convinced that the Arkansas Supreme Court would either be (1) persuaded to follow the lead of these states, or (2) would be inclined to adopt the views of § 53 of the Restatement (Third) of the Law Governing Lawyers. Because it is not the role of a federal appellate court sitting in diversity to create state

law and lacking a reasoned basis to predict that Arkansas would, in fact, adopt this approach, I would give deference to the district judge's determination that "corrective fees" are not awardable in malpractice claims in Arkansas. This is particularly so when in this case there has been no showing that the production of a privileged document caused harm to the client and the client chose to pursue what turned out to be a futile, and substantially expensive, endeavor to "claw back" the erroneously produced documents.

If the Arkansas Supreme Court relaxed the case-within-a case requirement for malpractice claims and allowed a client to recover damages outside of a loss in court, such as is set forth in § 53 of the Restatement (Third) of the Law Governing Lawyers, then I concur in the majority's analysis.

_____