STATE OF MINNESOTA

IN SUPREME COURT

A23-0015

Court of Appeals

Craig A. Reichel, et al.,

   Appellants,

vs.

Wendland Utz, LTD, et al.,

   Respondents.

Moore, III, J.
Took no part, Hennesy, Gaïtas, JJ.

Filed: September 18, 2024
Office of Appellate Courts

———————————————

Charles A. Bird, Grant M. Borgen, Matthew B. De Jong, Bird, Stevens & Borgen, P.C., Rochester, Minnesota, for appellants.

Kevin P. Hickey, Jessica L. Klander, Peggah Navab, Bassford Remele, P.A., Minneapolis, Minnesota, for respondents.

Duane A. Lillehaug, Maring Williams Law Office, P.C., Detroit Lakes, Minnesota; and

Michael L. Weiner, Yaeger & Weiner, PLC, Roseville, Minnesota, for amicus curiae Minnesota Association for Justice.

William L. Davidson, Lind, Jensen, Sullivan & Peterson, P.A., Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

Charles E. Jones, Moss & Barnett, P.A., Minneapolis, Minnesota; and

M. Gregory Simpson, Meagher + Geer, PLLP, Minneapolis, Minnesota, for amicus curiae Minnesota Firm Counsel Group.

———————————————

1

1.     In an interlocutory appeal from a partial final judgment under Minn. R. Civ. P. 54.02, the court of appeals lacks jurisdiction to decide claims still pending in the district court.

2.     To satisfy the but-for causation element of a legal malpractice claim premised on professional negligence, when the appellant is alleging that it incurred substantial attorney fees to correct the harm caused by a law firm's negligence in a litigation matter, the appellant need only show that the alleged harm would not have occurred but for the law firm's negligence.

Reversed in part, vacated in part, and remanded.

O P I N I O N

MOORE, III, Justice.

This case comes to us on an interlocutory appeal of a partial final judgment under Minn. R. Civ. P. 54.02. The parties seek clarification regarding a legal question we have not previously decided: whether a plaintiff may bring a legal malpractice claim to recover attorney fees incurred due to the professional negligence of counsel in prior litigation, despite an ultimately successful outcome in the prior litigation. As a threshold matter, we must also decide whether the court of appeals had jurisdiction to resolve other legal malpractice claims that were not decided by the district court or certified as part of the partial final judgment. We conclude that some of the court of appeals' legal rulings must be vacated for lack of appellate jurisdiction because the court of appeals purported to resolve issues arising from nonappealable orders under Minn. R. Civ. App. P. 103.03. As

to the legal malpractice claim over which we do have jurisdiction, because we conclude that a plaintiff may satisfy the but-for causation element of a professional negligence claim even when the underlying litigation was ultimately successful, we reverse the court of appeals' decision affirming summary judgment on the professional negligence claim of Reichel Foods, Inc. and remand for further proceedings.

## FACTS

Appellant Craig Reichel is a Rochester businessperson who owns several companies relevant to this case. The largest of these is appellant Reichel Foods, Inc. He also owns three limited liability companies: appellant Coyote Creek Outdoors, LLC ("Coyote Creek"), appellant Herdbull Holdings, LLC, and appellant Bullets & Broadheads, LLC (collectively, "the LLCs").[1] Here, appellants advance legal malpractice claims arising from the legal representation provided in a litigation matter by the respondents: the law firm Wendland Utz, LTD, and one of its former lawyers, Jerrie Hayes (collectively, "Wendland Utz") in a litigation matter. Although the representation yielded an ultimately favorable outcome, Reichel alleges that Wendland Utz failed to provide a competent defense, and as a result, the favorable outcome came only after incurring substantial attorney fees and costs to correct the law firm's negligence.

The facts of this case are disputed, and the procedural history is complicated. Because we are reviewing the district court's grant of summary judgment to Wendland

---

[1] This opinion uses "Reichel" to refer to all the appellants collectively and "Reichel Foods" to refer to Reichel Foods, Inc. specifically.

3

Utz, we state the facts in the light most favorable to Reichel, the nonmoving party. *See Franklin v. Evans*, 992 N.W.2d 379, 384 (Minn. 2023) (explaining that in reviewing a grant of summary judgment, we view the evidence in the light most favorable to the nonmoving party and resolve all doubts and factual inferences against the moving party).

### *The Underlying Litigation*

In March 2013, Craig Reichel's brother, Bryan Reichel, filed a lawsuit in Olmsted County District Court against Craig[2] and the LLCs. Reichel Foods was not sued as a defendant but allegedly paid a large amount of the defendants' legal fees. The lawsuit claimed that Bryan owned an equity interest in Coyote Creek, which had allegedly breached its fiduciary duties to Bryan. Bryan's own company, Reichel Investments, L.P., had made a series of payments to Coyote Creek totaling $186,000. The parties disputed whether the payments were related to a loan from Coyote Creek or an investment in Coyote Creek.

Craig had a longstanding relationship with the Rochester law firm Wendland Utz, LTD, which assigned one of its litigators, Jerrie Hayes, to defend Craig and the LLCs in connection with Bryan's lawsuit (Craig had not previously worked with Hayes). But as the district court in the legal malpractice case aptly observed, while discovery proceeded in the case, "the litigation began to unravel."

In October 2013, the district court in the underlying lawsuit issued a temporary

---

[2] Because the two brothers share the same last name, we refer to them by their first names here.

restraining order against the defendants to preserve and maintain evidence after Bryan alleged that they "lost or destroyed all relevant email communications and refused to provide access to electronically stored information." Next, Bryan sought an order for contempt premised upon Hayes's alleged failure "to timely answer and fully respond" to Bryan's written discovery. At a hearing on the contempt motion, Hayes was not allowed to argue against the motion because she had not previously submitted a written memorandum responding to it. The district court granted the motion from the bench and ordered Wendland Utz and Hayes to pay $12,133 to Bryan's lawyers within five days. Despite this adverse ruling, in an email to Craig later that day, Hayes described the hearing as "pretty uneventful."

Less than a week later, the district court granted another motion by Bryan for a preliminary injunction, finding that the defendants had "lost, secreted or hidden relevant electronically stored information" and had "failed and refused to provide truthful, complete or accurate answers to discovery." It appointed a receiver to manage the LLCs and gave the receiver authority to "take custody, control and possession of all the funds, property, premises, leases, and other assets" under the control of Craig's businesses.

By December 2013, another Wendland Utz attorney had taken over the case. The new attorney advised Craig to have the LLCs file for bankruptcy under the representation of the Twin Cities law firm Larkin Hoffman Daly & Lindgren Ltd. The new strategy was to litigate the proceedings in a fresh forum because Craig's new attorney "felt that it was pretty unlikely" that Craig would succeed on any further discretionary rulings and that "bridges had been burned" with the district court judge. Craig took the advice, and the

5

LLCs filed petitions in bankruptcy court, seeking reorganization under Chapter 11. Bryan's district court lawsuit was stayed pending the approval of the bankruptcy plan.

The bankruptcy court eventually confirmed the bankruptcy plan and found that Craig was the sole owner of the LLCs. Because the bankruptcy court's findings effectively nullified Bryan's claim of ownership interest in Coyote Creek, Bryan stipulated to the dismissal of the district court claims against the LLCs, but the claims against Craig himself remained.[3] Craig moved for summary judgment on the remaining claims against him, which the district court granted. The court of appeals upheld the district court's decision. *Reichel Invs., L.P. v. Reichel*, No. A15-1724, 2016 WL 3884552, at *9 (Minn. App. July 18, 2016), *rev. denied* (Minn. Sept. 28, 2016).

### The Legal Malpractice Lawsuit

In November 2018, the appellants in this case—Craig, Reichel Foods, and the LLCs—filed a lawsuit in Olmsted County District Court against Wendland Utz. The lawsuit alleged three claims based on different theories of legal malpractice: (1) breach of contract, (2) professional negligence (styled "professional malpractice"), and (3) breach of fiduciary duty.[4] Reichel's theory of the case was that Wendland Utz was negligent in

---

[3] Craig also made a $200,000 settlement payment in exchange for the assignment of an alter ego claim possessed by Bryan's own bankruptcy trustee.

[4] Reichel also asserted six other claims: unjust enrichment, negligent supervision, respondeat superior, fraudulent misrepresentation by Wendland Utz, fraudulent misrepresentation by Hayes, and fraudulent nondisclosure. Because these claims are not at issue in this court, we do not address the treatment of these claims by the district court or the court of appeals.

defending the underlying litigation, and this negligence resulted in Reichel incurring substantial attorney fees and costs to correct the negligence, despite the ultimate success of the case. According to Reichel's expert affidavit, the additional litigation expenses totaled over $940,000.

In June 2021, Wendland Utz filed a motion for partial summary judgment, seeking dismissal of several of the claims brought by Reichel Foods, including the professional negligence claim. Wendland Utz alleged that Reichel Foods lacked standing to sue for legal malpractice and that all of Reichel Foods' claims failed as a matter of law.[5] For purposes of summary judgment, Wendland Utz did not dispute its negligence.

As relevant to this appeal, the district court determined that Wendland Utz was nonetheless entitled to summary judgment on Reichel Foods' professional negligence

---

[5]     The district court ruled that there was "a genuine issue of material fact as to Reichel Foods' standing to sue for legal malpractice, as there is a genuine issue of material fact on the existence of an attorney-client relationship" between Reichel Foods and Wendland Utz. Accordingly, the district court denied summary judgment on that basis.

Additionally, in a footnote, the district court acknowledged that Wendland Utz had argued that all the claims brought by Reichel Foods should be dismissed. Wendland Utz asserted: "All of Reichel Foods, Inc.'s purported claims against the Firm and Hayes flow from their defense of the actual Defendants in the underlying Olmsted County case. Those claims independently fail as well." But the district court stressed that Wendland Utz had not addressed the other claims in its briefing, and Wendland Utz had not made an alternative argument in light of the district court's ruling that "Reichel Foods may have been a client of [Wendland Utz] in the course of the litigation." Because the district court was "loathe to create or assume the arguments of the parties," the district court stated that it "does not reach these other pled counts as part of its Order, and they remain pending" against Wendland Utz.

Wendland Utz does not challenge the district court's determination that there was a genuine issue of material fact as to Reichel Foods' standing or the district court's pronouncement that Reichel Foods' other claims remained pending. Consequently, these issues are not before us.

claim. The district court concluded that Minnesota law required Reichel Foods to demonstrate that, but for the law firm's conduct, Reichel Foods would have been successful in the defense of the underlying action. *See Guzick v. Kimball*, 869 N.W.2d 42, 47 (Minn. 2015). The district court determined that "the record is inadequate to support a genuine issue of material fact as to the element of but-for causation" because Reichel was successful in the defense of the underlying action as "measured by the ultimate outcome of the litigation." The district court therefore granted summary judgment against Reichel Foods as to its professional negligence claim. The district court also granted summary judgment against Reichel Foods on the claims of unjust enrichment, misrepresentation, and nondisclosure. The district court did "not reach" Reichel Foods' other claims of legal malpractice—based on theories of breach of contract and breach of fiduciary duty—noting that Wendland Utz had not addressed these claims in its briefing.

In June 2022, Wendland Utz brought a second motion for summary judgment. With respect to the legal malpractice claims at issue here, Wendland Utz challenged Reichel's claims for breach of contract and breach of fiduciary duty, as well as the professional negligence claims advanced by Craig Reichel and the LLCs. On these claims, Wendland Utz repeated its previously successful argument that but-for causation cannot be proven if the underlying litigation had a successful outcome.

Before the district court had ruled on this new summary judgment motion, Reichel moved for partial final judgment under Minn. R. Civ. P. 54.02 on the claims the district court had dismissed in the first summary judgment ruling. Over the opposition of Wendland Utz, the district court granted the motion and issued an amended order,

8

reasoning that clarification was needed on "an issue of first impression in Minnesota courts: Whether a lawyer who negligently thrusts a client into other or ongoing 'same-case' litigation (not merely a transactional matter) is entitled to recover the legal fees as damages even though the ultimate result is 'successful.' " Finding "no just reason for delay" regarding that question, the district court expressly directed "immediate entry of judgment" and dismissed with prejudice the professional negligence count of the complaint as to Reichel Foods. The district court specified that "Reichel Foods still has claims pending," including the claims for breach of contract and breach of fiduciary duty against Wendland Utz. The district court explicitly reserved judgment on the other pending motions, including Wendland Utz's June 2022 motion for summary judgment. As a result, when partial final judgment was entered, the district court had resolved *only* the professional negligence, unjust enrichment, misrepresentation, and nondisclosure claims brought by Reichel Foods and had not resolved *any* of the claims brought by Craig or the LLCs (including the professional negligence claims brought by those parties).

### *The Interlocutory Appeal*

Reichel appealed the partial final judgment to the court of appeals under Minn. R. Civ. App. P. 103.03(a), including the district court's summary judgment dismissal of Reichel Foods' professional negligence claim. Wendland Utz filed a notice of related appeal under Minn. R. Civ. App. P. 103.02, subd. 2, asking the court of appeals to "revers[e] that portion of the partial summary judgment order that fails to address and dismiss the alternative theories of legal malpractice (breach of contract and breach of fiduciary [duty])." After questioning jurisdiction and receiving briefing from the parties,

9

the court of appeals issued a special term order accepting jurisdiction over the appeal, ruling that the district court did not abuse its discretion in certifying the judgment for immediate appeal. *Reichel v. Wendland Utz*, No. A23-0015, Order at 5 (Minn. App. filed Jan. 24, 2023).

On the merits, the court of appeals affirmed in part, reversed in part, and remanded. *Reichel v. Wendland Utz, LTD*, No. A23-0015, 2023 WL 5838837 (Minn. App. Sept. 11, 2023). The court of appeals agreed with the district court that a professional negligence suit premised on a litigation matter requires "the loss or destruction of a cause of action" that would have otherwise been successful. *Id.* at *4. The court of appeals therefore affirmed the dismissal of Reichel Foods' professional negligence claim. *Id.* at *1. In addition, as relevant here, the court of appeals concluded that the district court erred in denying summary judgment on Reichel's claims for breach of contract and breach of fiduciary duty. *Id.* at *6.

Reichel filed a petition for further review. We granted review on issues relating to the legal malpractice claims but directed the parties to "address the basis or bases for appellate jurisdiction" over the following claims:

> (1) the breach-of-fiduciary-duty and breach-of-contract claims brought by petitioner Reichel Foods; and (2) the professional malpractice, breach-of-contract, and breach-of-fiduciary duty claims brought by petitioners Craig Reichel, Coyote Creek Outdoors, LLC, Herdbull Holdings, LLC, and Bullets & Broadheads, LLC.

*Reichel v. Wendland Utz, LTD*, A23-0015, Order at 2 (Minn. filed Dec. 19, 2023). We further stated, "[i]f appellate jurisdiction is lacking over any of these claims brought by any of these petitioners, the parties are further directed to address whether the court of appeals'

decision appearing to resolve these claims should be vacated." *Id.*

## ANALYSIS

At issue here is the legal viability of Reichel's legal malpractice claims. Legal malpractice claims may be based on "multiple legal theories," including "professional negligence, breach of fiduciary duty, and breach of contract." *Mittelstaedt v. Henney*, 969 N.W.2d 634, 639 (Minn. 2022) (stressing, however, that these are "distinct claims," and they do not share "identical elements"). Reichel brought legal malpractice claims against Wendland Utz under all three theories, focusing on the actions and inactions of Hayes that allegedly caused Reichel to incur inordinate fees over the course of the litigation.

We first address the jurisdictional issue raised by the court of appeals' consideration and determination of the legal malpractice claims upon which the district court never ruled. Because the court of appeals lacked jurisdiction to resolve those claims, we vacate those parts of the court of appeals' opinion. After resolving the jurisdictional issue, we next address a narrow question of first impression as to the sole claim over which there is appellate jurisdiction: whether the but-for causation element of a professional negligence claim arising from legal representation in a litigation matter requires an unsuccessful result in the underlying litigation. Because we conclude that Reichel is not categorically barred from asserting a professional negligence theory of relief in a legal malpractice claim merely because there was ultimately a successful result in the underlying litigation, we reverse the decision of the court of appeals affirming summary judgment on Reichel Foods' professional negligence claim and remand to the district court for further proceedings consistent with this opinion.

11

I.

We begin with the threshold issue of jurisdiction. "A challenge to appellate jurisdiction may be raised at any time and cannot be waived or forfeited." *In re Polaris, Inc.*, 967 N.W.2d 397, 405 (Minn. 2021). We review matters of appellate jurisdiction de novo. *Id.*

This is an interlocutory appeal, meaning that the district court has not issued a final judgment that resolves all claims brought by all parties. *See City of Elk River v. Bolton & Menk, Inc.*, 2 N.W.3d 173, 177 (Minn. 2024). "Generally, interlocutory appeals are disfavored and, ordinarily, only 'final judgments' are appealable." *Gordon v. Microsoft Corp.*, 645 N.W.2d 393, 398 (Minn. 2002). Interlocutory appeals are disfavored because they "may cause disruption, delay, and expense for litigants; they also burden appellate courts by requiring immediate consideration of issues which may become moot or irrelevant by the end of trial." *Emme v. C.O.M.B., Inc.*, 418 N.W.2d 176, 179 (Minn. 1988).

Our discussion of jurisdiction is limited to Reichel's legal malpractice claims, which were the only issues on which we granted review. The district court resolved only one of the legal malpractice claims brought by one of the parties: the professional negligence claim brought by Reichel Foods. The district court did not reach the breach-of-contract and breach-of-fiduciary-duty claims brought by Reichel Foods in Wendland Utz's first summary judgment motion, and the district court reserved ruling on the remaining legal malpractice claims raised in Wendland Utz's second summary judgment motion. At the time of this appeal, those claims remain pending in the district court.

Rule 103.03 of the Minnesota Rules of Civil Appellate Procedure is "the touchstone for most questions of appealability." 3 Erica A. Holzer & Katherine S. Barrett Wiik, *Minnesota Practice—Appellate Rules Ann.* § 103.5 (2024 ed.). Rule 103.03 sets out specific categories of appealable orders and judgments. One of those categories includes an exception to our general rule disfavoring interlocutory appeals: "a partial judgment entered pursuant to Minn. R. Civ. P. 54.02." Minn. R. Civ. App. P. 103.03(a). "A party may appeal from a partial judgment entered pursuant to Rule 54.02 if an action involves 'multiple claims for relief or multiple parties,' the district court makes 'an express determination that there is no just reason for delay,' and the district court expressly directs the entry of a final judgment." *Elk River*, 2 N.W.3d at 177. We recently explained that " 'Rule 54.02 is intended to reduce piecemeal appeals by limiting appeals from judgments that resolve only part of the litigation,' and 'to liberalize the appellate process for parties who might be prejudiced by waiting to appeal a decision where other claims or liabilities are yet to be decided.' " *Id.* (quoting *T.A. Schifsky & Sons, Inc.*, 773 N.W.2d 783, 787 (Minn. 2009)).

In this case, the district court made an express determination that there was no just reason for delay and directed the entry of a final judgment pursuant to Rule 54.02, but only as to the professional negligence claim brought by Reichel Foods. Nonetheless, the court of appeals not only affirmed the summary judgment dismissal of the professional negligence claim brought by Reichel Foods but also purported to resolve the other legal malpractice claims. The court of appeals addressed the legal malpractice claims in terms of the "appellants"—seemingly referring not only to Reichel Foods but also to Craig

13

Reichel and the LLCs. The court of appeals ruled that "the district court did not err in dismissing appellants' legal malpractice claim because appellants failed to show 'but for' causation," but the district court did err "in denying summary judgment on appellants' remaining claims that involve a showing of 'but-for' causation." *Reichel*, 2023 WL 5838837, at *1.

We conclude that the court of appeals had jurisdiction over only the professional negligence claim brought by Reichel Foods, which was the only legal malpractice claim the district court resolved on summary judgment and the only claim for which the district court stated that there was no just reason for delay and expressly directed the immediate entry of judgment pursuant to Rule 54.02. Rule 54.02 permits the district court to direct entry of a *partial* final judgment, and Minn. R. Civ. App. P. 103.03(a) provides for an immediate appeal only of the issues and claims resolved in the partial final judgment. Rule 103.03(a) provides no basis for an appeal of the other legal malpractice claims brought by Reichel Foods or the legal malpractice claims brought by Craig Reichel and the LLCs.

Wendland Utz makes no argument that an alternative basis for appellate jurisdiction exists under Minn. R. Civ. App. P. 103.03. As noted, the district court did not even rule on the other legal malpractice claims. In the first summary judgment order, the district court specifically stated that it was not reaching Reichel Foods' claims for breach of contract and breach of fiduciary duty. And the district court specifically reserved ruling on the second summary judgment motion. The district court made clear that the other legal malpractice claims remain pending in the district court. Moreover, even if the district court had denied summary judgment on the other legal malpractice claims, as the court of appeals

14

suggested, an order denying summary judgment is not an appealable order under Rule 103.03 and generally is not otherwise immediately appealable. *See McCullough & Sons, Inc. v. City of Vadnais Heights*, 883 N.W.2d 580, 585–86 (Minn. 2016).

Wendland Utz relies primarily on Minn. R. Civ. App. P. 103.04 to establish appellate jurisdiction over these other claims, which provides, in relevant part:

> The appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require.
> On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment. They may review any other matter as the interest of justice may require.

Wendland Utz describes Rule 103.04 "as a flexible exception to the general constraints of appellate jurisdiction."

We reject the reliance of Wendland Utz on Rule 103.04. Rule 103.04 governs the *scope* of appellate review, not whether an appellate court has jurisdiction in the first instance. *Cf. Nw. State Bank v. Foss*, 177 N.W.2d 292, 294 (Minn. 1970) ("An appeal from a *judgment* entitles the appellant to appellate review, the *scope* of which is determined by the proceedings prior to the entry of judgment." (emphasis added)). Therefore, in an interlocutory appeal, Rule 103.04 does not provide a basis for appellate jurisdiction over other nonappealable orders. In other words, a party cannot use Rule 103.04 to expand an interlocutory appeal beyond the claims the district court certified under Rule 54.02, which would essentially allow an interlocutory appeal of a partial final judgment to be converted

15

into a piecemeal appeal of any nonfinal order.[6]

We conclude that the court of appeals lacked jurisdiction to consider Reichel's claims for breach of contract and breach of fiduciary duty, as well as the professional negligence claims of appellants other than Reichel Foods. Vacatur is proper when the court of appeals lacked jurisdiction. *See Howard v. Svoboda*, 890 N.W.2d 111, 116 (Minn. 2017). Accordingly, we vacate the rulings of the court of appeals on all of the legal malpractice claims, with the exception of the professional negligence claim brought by Reichel Foods.

## II.

We now proceed to the substantive issue on which we granted review—whether Minnesota law allows the recovery of attorney fees as damages in a legal malpractice claim premised on professional negligence when they are incurred to "correct" a lawyer's negligence, even though the client was ultimately successful in the underlying litigation. Because of our ruling on the jurisdiction issue, we consider only the professional negligence claim of Reichel Foods.

---

[6]     Wendland Utz filed a notice of related appeal in the court of appeals under Minn. R. Civ. App. P. 103.02, subd. 2. For the same reasons, we conclude that Rule 103.02, subdivision 2, does not provide an independent basis for appellate jurisdiction. Rather, that rule enables a party, once another party has filed a notice of appeal, to "*seek* review of a judgment or order in the same action." *Id.* (emphasis added). In an interlocutory appeal of a partial final judgment under Rule 54.02, the court of appeals must consider whether the related order is independently appealable under Rule 103.03. *See* Minn. R. Civ. App. P. 103.03(a) (allowing for the court of appeals to hear an appeal "from a final judgment, or from a partial judgment entered pursuant to Minn. R. Civ. P. 54.02").

16

We review a district court's grant of summary judgment de novo. *Mittelstaedt*, 969 N.W.2d at 638. Legal conclusions concerning the elements of legal malpractice are likewise subject to de novo review. *See Jerry's Enters., Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 819 (Minn. 2006). Here, a careful examination of the policies undergirding our legal malpractice jurisprudence leads us to conclude that a successful outcome in the underlying litigation is not an absolute bar to liability for legal malpractice under a professional negligence theory.

A.

To prevail on a professional negligence claim in a litigation matter, a legal malpractice plaintiff "traditionally must show": (1) the existence of an attorney-client relationship, (2) acts constituting negligence, (3) that such acts were the proximate cause of the plaintiff's damages, and (4) that "but for defendant's conduct, the plaintiff would have been successful in the prosecution or defense of the action." *Jerry's*, 711 N.W.2d at 816. We have explained that the fourth element—but-for causation—may be satisfied if a plaintiff demonstrates "a *winable* [sic] case-within-a-case" in the underlying litigation. *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406, 409 (Minn. 1994) (citation omitted) (internal quotation marks omitted).

Because Wendland Utz did not dispute its negligence for purposes of summary judgment and because the district court dismissed Reichel Foods' professional negligence claim solely on the ground of but-for causation, we do not address the merits of the professional negligence claim. Rather, we focus on the district court's ruling that Reichel Foods could not sustain a professional negligence claim as a matter of law because the

17

underlying litigation was ultimately resolved in Reichel's favor.

The professional negligence theory of legal malpractice has developed as an outgrowth of our case law dealing with ordinary negligence. *See Hill v. Okay Constr. Co.*, 252 N.W.2d 107, 118 (Minn. 1977) (analogizing the duty of an attorney in representing a client to the duty of reasonable care in an ordinary negligence case).[7] Proving an "ordinary negligence claim" requires a plaintiff to establish four essential elements: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury." *Gradjelick v. Hance*, 646 N.W.2d 225, 234 (Minn. 2002). The connection between the two kinds of negligence claims (ordinary and professional) is apparent when comparing the elements of ordinary negligence to the elements of professional negligence. To prevail in a legal malpractice action, a plaintiff must show: (1) that an attorney client relationship existed (2) that defendant acted negligently or in breach of contract (3) that such acts were the proximate cause of damages incurred by the client, and (4) but for the attorney's conduct, the individual would not have incurred the damages. *Compare, e.g.*, *Togstad v. Vesely, Otto, Miller & Keefe*, 291 N.W.2d 686, 688 (Minn. 1980), *with Gradjelick*, 646 N.W.2d at 234.

---

[7] The standard of representation by which an attorney must abide has long been discussed in terms of negligence. *See, e.g.*, *Pitt v. Yalden*, 4 Burr. 2060, 2061–62, 98 Eng. Rep. 74, 75 (K.B. 1767) ("It does not appear to me, that they were grossly negligent, or grossly ignorant, or intentionally blamable: they were country attornies; and might not, and probably did not know that this point was settled here above.").

18

The primary difference between our articulation of the ordinary negligence elements and the elements of professional negligence in a legal malpractice context is that but-for causation is not a discrete element under ordinary negligence, but rather is subsumed into the element of proximate cause. "But-for causation," therefore, "is still necessary" for proximate causation in an ordinary negligence case "because if the harm would have occurred even without the negligent act, the act could not have been a [proximate cause] in bringing about the harm." *George v. Est. of Baker*, 724 N.W.2d 1, 11 (Minn. 2006). By contrast, our professional negligence jurisprudence has maintained but-for causation as a distinct element and has traditionally described that requirement in terms of whether a party, but for the attorney's negligence, "would have been successful" in the underlying litigation. *Togstad*, 291 N.W.2d at 688.

In developing our case law regarding professional negligence, we have examined various settings in which an attorney's negligence might cause harm. First, we have considered the typical malpractice scenario, when an attorney's alleged negligence in failing to file an action on behalf of the plaintiff "permit[ed] the statute of limitations to operate against [the] plaintiff's claim." *Christy v. Saliterman*, 179 N.W.2d 288, 293 (Minn. 1970); *see also Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 264–65 (Minn. 1992) (involving a situation when a defendant was found liable because certain defenses were, in the view of the defendant, negligently forfeited). In such cases, we have held that the client had the burden of proving that, but for the attorney's negligence, the client would have been successful in the prosecution or defense of the action. *Christy*, 179 N.W.2d at 294. This "case-within-a-case" language acts as a

19

descriptor of the but-for causation element that is unique to malpractice claims alleging that the attorney's negligence resulted in the loss or damage to a client's cause of action that "could have been won at trial." *Rouse*, 520 N.W.2d at 409 (citation omitted) (internal quotation marks omitted) (emphasis omitted). "Once it has been established . . . that [the] plaintiff has sustained damages by reason of the attorney's negligence . . . , the right to recover is established." *Christy*, 179 N.W.2d at 294.

But when the attorney's alleged negligence results in damages in a transactional matter, we have articulated the but-for causation element differently. In *Jerry's Enterprises, Inc. v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, for example, we stated what appears to be an alternative rule: "[I]n an action for legal malpractice arising out of representation in *transactional* matters," a plaintiff may establish but-for causation by showing that "but for [the] defendant's conduct, the plaintiff would have obtained a *more favorable result* in the underlying transaction than the result obtained." 711 N.W.2d 811, 819 (Minn. 2006) (emphasis added). We observed that, previously, we had "formulated" the but-for causation element in a way that applied logically to traditional malpractice cases in litigation matters "in which the alleged injury was damage to or loss of a cause of action belonging to the plaintiff." *Id.* But because the alleged negligence in *Jerry's* arose out of a transactional representation that did not affect the plaintiff's cause of action, we concluded that the plaintiff did not need to prove that it "would have been successful in the prosecution or defense" of an underlying litigation matter. *Id.* (citation omitted) (internal quotation marks omitted).

However, we have never squarely addressed how the but-for causation element applies when, even though the litigation ended successfully, the attorney's negligence in conducting the litigation nevertheless saddled the client with unnecessary or unreasonable costs. We now proceed to answer this question.

B.

The two sides to this dispute read our case law quite differently. Wendland Utz argues that *Jerry's* demonstrates an intent by this court to separate malpractice cases along sharp categorical lines. According to Wendland Utz, when an attorney has represented a client in a transactional matter, the "more favorable result" standard from *Jerry's* applies, 711 N.W.2d at 819; however, when the attorney has represented the client in litigation, the "case-within-a-case" analysis controls, *Rouse*, 520 N.W.2d at 406. Reichel asks us instead to draw the line "between loss or damage to a claim and everything else." In Reichel's view, the *Jerry's* standard applies not only in transactional cases, but whenever the alleged harm is something other than the loss of or damage to a cause of action or defense.

We agree with Reichel. Although the dispute in *Jerry's* happened to stem from representation in a transactional matter, the reason we gave for articulating a different standard of but-for causation was the absence of "damage to or loss of a cause of action," *Jerry's*, 711 N.W.2d at 819, not that the underlying representation was related to a transactional matter. The upshot, then, is that the nature of what must be proven to establish but-for causation is entirely dependent upon the nature of the harm alleged. When the harm involves the negligent loss of a client's claim or defense, a showing that the claim or

21

defense would have been otherwise successful is necessary.

Accordingly, we hold that in a professional negligence claim such as that presented here, when the plaintiff alleges some type of harm *other* than the negligent loss of a claim or defense in litigation, the case-within-a-case methodology is inapplicable, and the plaintiff must rather demonstrate that the alleged harm would not have occurred absent the defendant's negligence. The manner in which "the fourth element in a legal malpractice action has, in the past, been formulated," *id.*, is just that—a *formulation*, which must be adapted to the contours of the particular circumstances necessary to prove but-for causation in any professional negligence claim. The case-within-a-case formulation of but-for causation, which still applies when a legal claim is lost or damaged, is inapplicable here, when the alleged harm occurred despite a legal victory.

Our conclusion as to the nature of the but-for causation element of professional negligence is supported by several authorities we find persuasive. Most recently, the United States Eighth Circuit Court of Appeals concluded that, under Arkansas law, a malpractice plaintiff need only show that an attorney's negligence "led, in a natural and continuous sequence, to the extra fees" the plaintiff paid. *Gerber Prods. Co. v. Mitchell Williams Selig Gates & Woodyard, PLLC*, 28 F.4th 870, 872 (8th Cir. 2022) (citation omitted) (internal quotation marks omitted). There, the court found that "[t]here is no case within a case," when the plaintiff claimed that the harm stemmed from the legal fees incurred during the litigation to regain attorney-client privilege, which had been negligently waived. *Id.* The underlying litigation in *Gerber* had not yet gone to trial when the malpractice suit was filed, "so there was no way [the plaintiff] could show that the

22

result in the underlying action would have been different." *Id.* at 871 (citation omitted) (internal quotation marks omitted). Instead, the court applied a traditional causation analysis, reasoning that "[i]t makes sense that proving a case-within-a-case is not a hard-and-fast requirement because an attorney's negligence can result in injuries other than a loss in court." *Id.* at 873.

To support its rationale, the *Gerber* court included a review of state court cases that weigh strongly in favor of adopting the ordinary negligence approach to malpractice causation. *Id.* at 873 n.1. These cases support our holding, too. In *Krahn v. Kinney*, for example, the Ohio Supreme Court concluded that attorney fees incurred to rectify an attorney's failure to appear at a hearing could be recovered in a malpractice action, regardless of whether the ultimate decision was decided in the client's favor. 538 N.E.2d 1058, 1061–62 (Ohio 1989). The highest courts in Alaska, California, and New York have also issued decisions favorable to Reichel's approach. *See Gefre v. Davis Wright Tremaine, LLP*, 306 P.3d 1264, 1281 (Alaska 2013) (holding that "a legal malpractice plaintiff may recover as actual damages the attorney fees incurred as a result of the defendant's malpractice, so long as the plaintiff can demonstrate she would not have incurred the fees in the absence of the defendant's negligence" (citation omitted) (internal quotation marks omitted)); *Jordache Enters., Inc. v. Brobeck, Phleger & Harrison*, 958 P.2d 1062, 1071 (Cal. 1998) ("There is no requirement that an adjudication or settlement must first confirm a causal nexus between the attorney's error and the asserted injury."); *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 443 (N.Y. 2007) ("A plaintiff's damages may include litigation expenses incurred in an attempt to avoid,

23

minimize, or reduce the damage caused by the attorney's wrongful conduct." (citation omitted) (internal quotation marks omitted)).

Finally, the Third Restatement of the Law Governing Lawyers supports our conclusion. Section 53, comment b, of that treatise states, in relevant part:

> The plaintiff in a previous civil action *may recover without proving the results of a trial* if the party claims damages other than the loss of judgment. For example, a lawyer who negligently discloses a client's trade secret during litigation might be liable for harm to the client's business caused by the disclosure.

Restatement (Third) of the Law Governing Lawyers § 53 cmt. b (Am. Law Inst. 2000) (emphasis added); *see also Suder v. Whiteford, Taylor & Preston, LLP*, 992 A.2d 413, 421 (Md. 2010) (citing comment b favorably in holding that "when the plaintiff is damaged in a way other than receipt of a less favorable judgment, the trial-within-a-trial approach is not necessary to prove malpractice"). Therefore, given the weight of our case law and the case law of other jurisdictions, we conclude that the case-within-a-case formulation of the but-for causation element is not a bright-line rule that applies in every instance of alleged negligence in litigation matters.

## C.

Lastly, we are unpersuaded by the policy argument, advanced by Wendland Utz and amici Minnesota Firm Counsel Group and Minnesota Defense Lawyers Association, that our holding today will open the floodgates to a wave of unmeritorious professional negligence claims against lawyers. We find unwarranted the assertions of amici that the straightforward application of the but-for causation element for professional negligence claims will hold attorneys ultimately liable merely because their clients' cases "could have

24

been litigated more cheaply."

Rather, we observe that in most cases, the most significant bulwark against unmeritorious malpractice claims exists in the plaintiff's burden to show *negligence*—a breach of the applicable duty of care. "An attorney who acts in good faith and in an honest belief that his advice and acts are well founded . . . is not answerable for a mere error of judgment." *Meagher v. Kavli*, 97 N.W.2d 370, 375 (Minn. 1959) (citation omitted) (internal quotation marks omitted). Still, "a professional must use reasonable care to obtain the information needed to exercise his or her professional judgment, and failure to use such reasonable care would be negligence, even if done in good faith." *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 113 (Minn. 1992). Thus, it is this standard of care, and not the but-for causation element, that shields members of the legal profession from liability for losses incurred from good-faith representation.[8]

We recognize that the question of whether a lawyer acted "with some level of reasonable care" will often be a fact issue that may be more difficult to resolve in pretrial motion practice. *See Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 505 (Minn.

---

[8]    As another court has described:

> [An attorney] is answerable in damages for any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the omission to use reasonable care and diligence, or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care.

*Hodges v. Carter*, 80 S.E.2d 144, 146 (N.C. 1954), cited in *Meagher*, 97 N.W.2d at 375 n.8.

25

1997) ("The question of negligence is ordinarily a question of fact and not susceptible to summary adjudication."). But, in the same vein, when facts are alleged that raise a genuine issue of material fact about whether an attorney's actions were reasonable, it would be inappropriate to dismiss them artificially using the bright-line rule proposed by Wendland Utz.[9] We reiterate our prior statements that "[p]ublic policy considerations do not favor protecting [negligent] attorneys from trial," and the "contention that [an ordinary negligence] standard would create unlimited liability for lawyers is simply untrue; it would subject them to trial, but not necessarily to ultimate liability." *Rouse*, 520 N.W.2d at 410.

The sole fact that a litigation matter resolved favorably "should not force a heightened burden of proof upon a client" whose attorney acted negligently. *Id.*; *see also Malpractice, Law of Law Firms* § 10:2 (2d ed. 2024) (stating that "[t]he general theory of the damages is to make the client whole, putting the client in the same position she would have been in but for the malpractice"). And it would be illogical if the traditional concept of but-for causation employed ubiquitously throughout our negligence jurisprudence were simply "replaced by a rule of thumb based on whether the malpractice plaintiff has succeeded" in demonstrating the merits of the underlying claim. *Krahn*, 538 N.E.2d at 1062.

---

[9] Nevertheless, attorneys still enjoy some procedural insulation against suit through the statutory requirement that plaintiffs provide at the pleading stage an expert affidavit supporting the elements of malpractice. *See* Minn. Stat. § 544.42, subds. 2–3 (2022) (requiring that, when expert testimony is to be used, the expert must attest that "the defendant deviated from the applicable standard of care and by that action caused injury to the plaintiff").

26

\* \* \*

Given that the case-within-a case approach is not a hard-and-fast requirement that mandates dismissal when the alleged injury is not loss or damage to a claim or defense, the district court erred by granting summary judgment based upon the inability of Reichel Foods to demonstrate that, but for the law firm's conduct, Reichel would have been successful in the defense of the action. When, as here, the question is only whether, as a matter of law, a plaintiff can bring a professional negligence claim when the plaintiff was ultimately successful in the underlying litigation matter, we conclude that the ordinary rules of negligence favor the *ability* to sue (sustaining and actually proving that claim being another matter).

Wendland Utz argues that we should not allow "an open-ended, unlimited theory of recovery of legal fees," and amicus curiae Minnesota Firm Counsel Group urges us to impose strict limitations on the recovery of corrective attorney fees. Because this case comes to us on an interlocutory appeal of a partial final judgment as to *one* element of *one* legal malpractice claim against *one* defendant, however, it would be premature for us to say more about how the litigation should proceed on remand. This appeal concerns an extremely narrow legal issue—whether the case-within-a-case element is an absolute requirement for a professional negligence claim arising out of a litigation matter. Wendland Utz did not move for summary judgment on the ground that there is no genuine issue of material fact as to its negligence. And the district court ruled that there is a genuine issue of material fact on the element of an attorney-client relationship.

27

Given these limitations on our holding, we therefore decline to elaborate on the future contours of the but-for causation element as applied to the facts of this particular case. *See Cruz-Guzman v. State*, 998 N.W.2d 262, 276 (Minn. 2023) (stating that, when the district court will resolve a claim "on remand with the benefit of a full evidentiary record, it would be premature for us to express our views on this issue"); *State ex rel. Smith v. Haveland*, 25 N.W.2d 474, 476–77 (Minn. 1946) (explaining that principles of justiciability prevent us from issuing an advisory opinion that articulates "what the law would be upon a hypothetical state of facts"). We therefore remand to the district court for further proceedings, which will require the development of the record related to the alleged negligence and other elements of the claims here.

## CONCLUSION

For the foregoing reasons, we reverse in part and vacate in part the decision of the court of appeals and remand to the district court for further proceedings consistent with this opinion.

Reversed in part, vacated in part, and remanded.

HENNESY and GAÏTAS, JJ., not having been members of this court at the time of submission, took no part in the consideration or decision of this case.